UNITED STATES of America, Plaintiff,

v.

**22.80 ACRES OF LAND, et al., Defendants.**

**No. C–84–20780 WAI.**

United States District Court, N.D. California.

July 3, 1985.

both parties in several written submissions, and orally during a telephone hearing, the undersigned concludes that there are two separate bases, each independently sufficient, for ordering disclosure of the subject report. One such basis is the court's conclusion that the government has not carried its burden to show that the appraisal is protected by any of the provisions of Federal Rules of Civil Procedure 26(b)(3) or 26(b)(4). The second basis for ordering the disclosure is a convincing showing by the Benoits that even if the appraisal arguably could be deemed protected by the work product privilege, the government waived that privilege when its supervisorial level employees, Mr. Robert W. Weast and Mr. Robert R. Fagin, used the subject report to refresh their recollection in preparing for their depositions in this case.

*The Government Has Failed to Demonstrate That The Report is Entitled to Presumptive Protection Under FRCP 26(b)(3) or (4)*

The government asserts that the appraisal report in issue here is presumptively protected against disclosure in discovery by FRCP 26(b)(4)(B). This subsection of Rule 26 applies, however, only to information generated "by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial." The government has not shown that Mr. Grijalva, author of the report in question, was "retained or specially employed" for this purpose. Nor does it seem likely that the government could make any such showing: by its own admission, Mr. Grijalva was, at the time he was asked to prepare this report, an employee on the payroll of the Bureau of Reclamation. Rule 26(b)(4)(B) was intended to extend protections not to a party's regular employees, but to outside experts a party retains once that party anticipates litigation or is preparing for trial. Nor has the government shown that Mr. Grijalva was hired after time pressures and other difficulties began to make it appear that negotiation might not be a sufficient tool to ac-

---

Paul E. Locke, Asst. U.S. Atty., Land and Natural Resources Division, San Francisco, Cal., for United States.

David W. Slaby, Pettit & Martin, San Francisco, Cal., for defendants Benoit Interests and Old National Bancorporation.

### OPINION RE DISCLOSURE OF INITIAL APPRAISAL

WAYNE D. BRAZIL, United States Magistrate.

The issue in the instant discovery dispute is whether the government (plaintiff) should be ordered to disclose to the Benoit defendants an initial appraisal report prepared by Robert Grihalva, an employee of the Bureau of Reclamation. After carefully considering arguments presented by

quire the property in question, and that it might be necessary to resort to litigation. Thus the protections of Rule 26(b)(4)(B) simply are not available to the government on the facts of this case.

■ Nonetheless, the government might be able to invoke the protections of subparagraph (3) of Rule 26(b). That subparagraph extends presumptive protection to "documents ... prepared in anticipation of litigation or for trial by or for another party." The work product doctrine, which is reflected in this Rule, is, like other privilege rules, to be narrowly construed because its application can derogate from the search for the truth. The party seeking to invoke the work product doctrine bears the burden of establishing all the elements that trigger the protection; doubts must be resolved against the party asserting the privilege.

■ In the first instance, the government bears the burden of establishing that the appraisal report in issue here was in fact prepared in anticipation of litigation. For the reasons stated herein, the court concludes that the government has failed to meet this burden.

In its effort to satisfy the Rule's requirements, the government relies on a Declaration by Gary T. Sackett, Regional Real Estate Officer of the Mid-Pacific Region of the Bureau of Reclamation, on *Hoover v. Department of the Interior*, 611 F.2d 1132 (5th Cir.1980), on the statute under which the appraisal was prepared, and on statements by counsel for the government about the process by which land is acquired for public uses. Neither independently, nor in combination, do these sources meet the government's burden. The Declaration by Mr. Sackett simply does not say (at least in words the court can comprehend) that this appraisal report was prepared at a time when litigation was anticipated with respect to this property. Nor does Mr. Sackett's Declaration say that the government routinely, or even frequently, is forced to resort to litigation to acquire property of the kind involved here. Mr. Sackett's Declaration provides precious little information

about what the relevant government officials anticipated, if anything, when they ordered Mr. Grihalva to prepare his appraisal.

In one of his letter briefs (June 20, 1985), counsel for the government asserted that "In nearly every federal project requiring the taking of land, a combination of direct purchase and condemnation must be utilized." This statement by counsel is, of course, not competent evidence. Nor is it supported by any citation of data, case law, or other authority. It remains a bald, unsupported assertion; as such, the court can give it virtually no weight.

The statute pursuant to which this appraisal was prepared is 42 U.S.C. § 4651. That statute sets out "nine guidelines to aid federal agencies in following uniform land acquisition practices" (Letter Brief of counsel for the government, June 20, 1985). Toward the end of the list, the statute alludes to the possibility of having to resort to condemnation proceedings (litigation). But in an earlier section, the statute also clearly encourages the federal agencies involved to attempt first to acquire property by negotiation. In fact, under the statute, the first use to which an appraisal is to be put is negotiation; only if negotiation fails might an appraisal be used to prepare a case in litigation. Thus, the structure of the authorizing statute suggests the inference that the primary purpose appraisals will serve is to aid a process of negotiation. The court does not believe that it would be consistent with the policies that inform construction of the work product doctrine to conclude that a document should be presumptively protected from disclosure simply because it was prepared at the beginning of a process that could take several different turns and could be concluded in any number of different ways, the last of which is litigation.

The government places considerable reliance on *Hoover v. United States Department of the Interior*, 611 F.2d 1132 (5th Cir.1980). At the outset, it should be noted that *Hoover* is not entirely apposite for at least two reasons. One is that in that case

the appraisal report that was in issue had been prepared by "an independent non-government appraiser" (*Id.*, at 1135), not, as in the situation before this court, by a regular employee of the defendant. Thus, in *Hoover*, the applicable Rule was 26(b)(4)(B), rather than 26(b)(3). This may be of some consequence because under the former subparagraph discovery can be had from a specially retained expert who will not testify at trial, but who has been consulted in anticipation of litigation, only on a showing of "exceptional circumstances", a standard that might be somewhat more demanding than the requirement under the latter Rule that material prepared in anticipation of litigation can be discovered (absent waiver) only on a showing of "substantial need." This arguable difference in required showings, however, only becomes relevant if the party resisting disclosure can show that the material sought by its opponent was in fact prepared in anticipation of litigation. And, as indicated herein, the government has failed to make that showing in this case.

*Hoover* also is distinguishable on another, and more significant, basis. In *Hoover*, the issue was not whether the appraisal report was discoverable in a condemnation proceeding, but, instead, whether the owner of the property could compel the Department of the Interior to make public the report by filing suit under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B). In that context, the *Hoover* court was constrained to determine whether, within the meaning of Exemption 5 of that section of the FOIA, such an appraisal report would be "routinely discoverable in private litigation." In resolving this question in the negative, two of the three judges on the *Hoover* panel (the third dissented on this point) relied heavily on the Department of the Interior's assertion that "its competitive position with the landowner would be adversely affected by premature disclosure of the appraisal during the negotiation process" and on concern expressed by Congress during hearings on the FOIA that such "premature release of information might prejudice the government's position

in bargaining transactions." (*Id.* at 1140). It is clear that these concerns about "premature disclosure ... during the negotiation process" are irrelevant to the situation before this court; negotiations were commenced during July of 1984 in this case, and began unraveling, partly because of time pressures affecting the underlying construction project, in the fall of that year. The Benoits seek discovery of the original appraisal report not to improve their position in the long-since terminated negotiations, but to equip them to present their case fully in the upcoming trial of this matter. Thus the reasoning that inspired the two judges of the Fifth Circuit panel, working in the context of a FOIA action, seems substantially less than compelling in the situation before this court.

It would be disingenuous, however, to conclude my discussion of *Hoover* with the point just made. It is clear that two of the three judges on the *Hoover* panel felt that the appraisal in issue in that case had been "prepared in anticipation of litigation," even though the judges recognized that the people who ordered the appraisal knew that it would be used in the first instance to try to negotiate a sale with the owner. To explain how they had concluded that the appraisal report was prepared in anticipation of litigation, the *Hoover* majority declared, without elaboration: "During the land acquisition process, the government *must* necessarily anticipate that negotiations for purchase *will fail*, thereby requiring condemnation. Appraisals are therefore obtained both for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit." *Id.*, fn. 8, at 1139, emphasis added. Thus, in essence, the *Hoover* majority judicially noticed an assumed fact: that whenever an appraisal is ordered, the government necessarily anticipates that it will be used in litigation, because the government necessarily anticipates that negotiations will fail.

It is not clear to this court that the fundamental proposition, assumed by the *Hoover* majority, is properly subject to ju-

dicial notice. The *Hoover* opinion offers no clue about the bases upon which the court came to this important conclusion. The question before this court is whether the *Hoover* court's unsupported generalization is a sufficient premise for concluding that the appraisal report sought by the Benoits in this case was prepared in anticipation of litigation. With due respect to the Hoover panel, this court answers the question in the negative.

In explaining that negative answer, it is important to begin by emphasizing again the factual setting in which the *Hoover* majority addressed the issue it confronted. In that case the government had secured the appraisal from an outside expert, then used the appraisal as a basis for making an offer to purchase a very unusual piece of property (a cave that was a home for an endangered species of bats). Promptly after receiving the government's initial offer, the owner of the cave filed a suit under the FOIA, attempting to compel the Department to release to him the appraisal on the basis of which the Department was negotiating with the owner. This scenario presents a real threat to the kinds of interests that concerned Congress when it enacted the FOIA. This scenario also makes it understandable why the *Hoover* majority would feel the need to decide that the report would not be "routinely discoverable in private litigation" and thus protected from disclosure in FOIA actions by Exemption 5. The undersigned believes, however, that because the *Hoover* panel addressed the issue about "anticipation of litigation" in this pressured setting, it did not give full consideration to all the policy and factual matters that would have commanded its attention if it had been addressing the work product issue in the setting currently before this court.

In this court's view, a rule that says, in effect, that a document is protected by the work product doctrine, even though it is prepared in the normal course of business, simply because it is possible that the first and most pressing use of the document, negotiation, might fail, and litigation might ensue, simply sweeps too far. Such a broad rule would do too much damage to the truth-finding process without delivering substantial benefits to important competing interests.

█ The work product doctrine was developed in order to discourage counsel for one side from taking advantage of the trial preparation undertaken by opposing counsel, and thus both to protect the morale of the profession and to encourage both sides to a dispute to conduct thorough, independent investigations in preparation for trial. See, *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). These purposes would not be advanced by extending the protection of the work product doctrine to materials that are prepared in the ordinary course of business or primarily for a purpose other than use in litigation. Thus, in determining whether given documents ought to be protected by this doctrine, it is important to ask whether they would have been prepared in the normal course of events, even if there were no meaningful prospect of litigation. In the case before this court, it seems abundantly clear that the initial appraisal report would have been prepared for use in negotiating a fair price for the property even if the government knew that there was no chance that it would eventually resort to litigation. The government has offered no evidence that the officials who ordered Mr. Grijalva to prepare his appraisal did so with the expectation that the negotiation process would break down and that the report would be used, thereafter, to help develop the government's side of a lawsuit. Indeed, the deposition testimony given by government agents suggests just the opposite: that when the government officials directed Mr. Grijalva to prepare the appraisal they expected it to be used in the negotiation process. These officials did not expect, at the outset, to resort to litigation; they did not anticipate litigation until several months after the negotiations had commenced, when time pressures forced them to turn to another means to achieve their objectives. See, for example, the deposition testimony of Robert R. Fagin, June 18, 1985, at 27, where he states that in July of

1984, when the negotiations began, there was no anticipation of a condemnation proceeding. See also depositions of Gary T. Sackett, June 18, 1985, at 23, and of Jack G. Gray, June 18, 1985, at 11–13.

The work product doctrine simply was not designed to protect documents prepared under these circumstances. That doctrine, which derogates the truth finding process, was designed to offer limited protection to materials that are prepared *because* litigation is anticipated *and for the purpose* of helping a party prepare to effectively litigate its side of a lawsuit. Documents prepared in that specific mind set deserve some protection so that lawyers will not lose incentives to conduct thorough investigations and dig deeply to develop information necessary to effectively represent their clients in litigation. But there is virtually no threat to those policy objectives when a court orders disclosure of materials that are prepared under the circumstances presented here: well before litigation is imminent, and, most significant, in the normal course of business for an important initial purpose that is completely independent of any litigation objective.

Given all of the above, it would be inappropriate to permit the *Hoover* court's generalization, unsupported by analysis of the policies informing the work product doctrine and unrelated to any specific set of factual circumstances, to dictate the result in the matter before this court. Instead, the undersigned finds that the government has failed to show that the appraisal in issue here was prepared in anticipation of litigation, as that phrase is used in Rule 26(b)(3) or (4). Therefore this court holds that the appraisal is not protected by the work product doctrine and must be disclosed.

*The Government Has Waived Protection From Disclosure Under Federal Rule of Evidence 612*

■ As a separate and independent ground for ordering disclosure of the first

appraisal report, the court finds that the United States has waived protection from disclosure of those portions of the appraisal report that Mr. Robert W. Weast[1] and Mr. Robert R. Fagin[2] reviewed to refresh their recollections in preparation for their depositions.

Federal Rule of Evidence 612 states, in relevant part:

> ... if a witness uses a writing to refresh his memory for the purpose of testifying, either—
>
> (1) while testifying, or
>
> (2) *before testifying, if the court in its discretion determines it is necessary in the interests of justice,*
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness....

Fed.R.Evid. 612 (1984) (emphasis added).

Rule 612 applies to written materials reviewed prior to a deposition. *In re Comair Air Disaster Litigation,* 100 F.R.D. 350, 353 (E.D.Ky.1983); *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138 (D.Del.1982). Rule 612(2) in particular has been interpreted to permit discovery of writings (or portions thereof) that a witness reviewed *before* a deposition for the purpose of refreshing his or her recollection; any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed. The court then may order disclosure if, in its discretion, it determines disclosure is in the interest of justice. Fed.Rule Evid. 612(2), *Comair, supra,* 100 F.R.D. at 353. *See also Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.,* 81 F.R.D. 8, 10 (N.D.Ill.1978).

In this case, deposition transcripts provided to the court by defendants clearly demonstrate that before their depositions,

---

**1.** Mr. Weast is Chief, Land Acquisition Branch, Mid-Pacific Regional Office, Bureau of Reclamation.

**2.** Mr. Fagin is a negotiator for the Bureau of Reclamation.

Mr. Weast and Mr. Fagin reviewed the appraisal reports produced in this case. Mr. Weast explicitly testified that he reviewed the appraisal reports in the period immediately before his deposition, and that those documents refreshed his recollection about some of the facts involved in this case. (*See* Weast Deposition Transcript, attached to defendants' July 2, 1985, Letter Brief, at 41–42.) Mr. Fagin testified that he reviewed portions of the appraisal reports involved in the property at issue in this case, and that this review served to refresh his recollection. (Fagin Deposition Transcript, at 12–13.) The deposition testimony clearly suggests that Mr. Weast consulted and relied on the appraisal reports to equip him to provide factual testimony at his depositions. *See Comair, supra,* at 353; *Wheeling-Pittsburgh, supra,* at 11; *Joseph Schlitz Brewing Co. v. Muller & Phipps (Hawaii) Ltd.,* 85 F.R.D. 118, 120 (W.D.Mo.1980). Mr. Fagin's testimony on this point is more ambiguous; it appears, however, that he consulted the appraisal reports in preparation for his deposition.

■ In evaluating whether waiver has occurred under Rule 612(2), courts must balance, on a case-by-case basis, the competing interests present: the objective of full disclosure and ascertainment of the truth that Rule 612 and the federal discovery rules reflect, against the interest in maintaining the confidentiality of protected material, as is represented by the work product doctrine. *Comair, supra,* at 353, *Wheeling-Pittsburgh, supra,* at 10.

Although given ample opportunity, the government in this case has not demonstrated that it will suffer substantial harm to its interest in nondisclosure if the court orders disclosure of the appraisal report. The government acknowledges that the negotiation phase of the acquisition is completed. The court can think of no significant danger in permitting defendants to have access to the appraisal report at this stage of the litigation.

In the absence of a showing of harm to the government, the countervailing interests in favor of disclosure and ascertainment of the truth must take precedence.

Access to the appraisal reports is necessary to enable defendants to effectively cross-examine government appraisal officials concerning the basis for their positions on the issue of compensation. "When ... a witness has used such materials to refresh his recollection prior to testifying, Fed.R. of Evid. 612 weights the balance in favor of finding that ... 'substantial need' exists, because of the policy in favor of effective cross-examination." *Comair, supra,* at 353. Moreover, "it would be unfair and unduly prejudicial to permit the deponent ... to review the ... report, give a deposition with it fresh in his mind, yet keep it unavailable to opposing counsel." *Id.* at 354.

In light of the foregoing, this court concludes that the government has not demonstrated that its interests will be significantly injured by disclosing the appraisal reports, at this stage of the litigation, to defendants.

Under Fed.Rule of Evid. 612(2), and the relevant case law, the court holds that the government has waived any work product protection it might otherwise have been able to assert with respect to Mr. Grijalva's appraisal report.

For the reasons set forth above, the court hereby ORDERS that plaintiff disclose to the Benoits the initial appraisal report prepared in this matter.