UNITED STATES of America, Plaintiff,

v.

**BLOCK 44, LOTS 3, 6, Plus the West 80 Feet of Lots 2 and 5, Etc., et al., Defendants.**

No. 96–617–Civ–J–21C.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 27, 1997.

---

Bonnie A. Glober, Assistant United States Attorney, Jacksonville, FL, for Plaintiff.

Robert S. Yerkes, Jacksonville, FL, for Defendant.

### ORDER ON DEFENDANT WINDSOR CORPORATION'S MOTION FOR ORDER COMPELLING DISCOVERY

· CORRIGAN, United States Magistrate Judge.

This case came before the Court on defendant Windsor Corporation's Motion for Order Compelling Discovery (Doc. # 40), filed February 13, 1997, to which plaintiff filed a response in opposition (Doc. # 51), filed March 3, 1997. The Court held a lengthy hearing on the motion on March 3, 1997, telephonically advised the parties of its rulings on March 21, 1997, and now issues this written Order.

This is an eminent domain action brought by the United States involving a parcel of developed property in downtown Jacksonville on which the United States wants to build a new federal courthouse. The present motion brought by the defendant landowner seeks to require the United States to produce certain information through discovery which defendant claims will lead to admissible evidence concerning the fair market value of the subject property. Although defendant's motion to compel references five different categories of information which are being sought and each of these five categories has spawned numerous discovery requests, for purposes of analysis, defendant's motion can be categorized into three parts.

I. *Documents Relating To United States' "Swap" Of Downtown Property With The City Of Jacksonville*

Defendant claims that the United States has publicly announced its intention to acquire title to a smaller, contiguous parcel of property located immediately behind the subject property (the smaller parcel used to be the Robert Meyer Hotel) by deeding to the City of Jacksonville, which owns the Meyer Hotel property, the existing Federal Courthouse located across the street. Defendant contends that its discovery requests relating to this "swap agreement" are relevant because the documents might reveal valuations by the United States or the City

of the two parcels involved in the swap, both of which are in close proximity to the subject property and, therefore, may provide evidence of the fair market value of the subject property.

The United States responds that the defendant's discovery requests are extremely overbroad and would require production of communications among a plethora of governmental agencies, internal government memoranda, Congressional and judicial communications concerning the proposed new courthouse and the like. The United States also contends that, because of "project influence" factors concerning the swap agreement, that is, that the swap would not have been considered if the subject property had not already been selected for the new courthouse, evidence of the swap agreement is useless in determining the fair market value of the subject property.

The Court agrees that full scale discovery of the underlying negotiations and discussions concerning the "swap agreement" would be overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. However, recognizing the broad standard applicable to discovery (as opposed to admissibility), the court will **grant** defendant **limited** discovery in this area. The United States will produce the formal, executed "swap agreement" between the United States and the City of Jacksonville concerning the Meyer property and the existing courthouse property, if in fact a definitive swap agreement has been executed. (No production of drafts, markups or the like is required.) The United States will also produce any written appraisals in its possession (by either outside or government appraisers) of either of the two properties subject to the "swap agreement," which appraisals relate to the "swap agreement." To the extent that defendant's motion to compel seeks broader discovery in this category than that just stated, the motion is **denied.**

II. *Discovery Relating To The United States' Selection Of The Subject Property For The New Federal Courthouse*

■ Defendant contends that documents which would disclose the reasons why the United States selected the subject property for the location of the new courthouse are discoverable and are relevant to the issue of fair market value which will be tried in this condemnation case. Defendant contends that the reasons for the government's site selection are relevant because they will constitute admissions by the government of the qualities and attributes of the subject property which play a large role in making up its fair market value.

The United States responds again that "site selection" discovery would be overbroad, requiring production of documents and depositions from numerous government agencies and sources, including members of Congress and the judiciary. The United States further argues that the information defendant seeks would only permit "apples and oranges" comparisons to the fair market value of the subject property.

The Court agrees with the United States and, therefore, **denies** the motion to compel this category of discovery. The discovery requests (attached as Exhibit B to Defendant's Memorandum in Support of the Motion to Compel (Doc. # 41)) are overbroad, intrusive and too attenuated to the issue of fair market value of the subject property to be a proper subject of discovery. Neither in their moving papers nor at argument did defendant demonstrate how the information which would be produced through these requests would reasonably lead to admissible evidence concerning fair market value. Moreover, defendant has cited no case which supports its position and, indeed, the only case authority offered is by the United States wherein the United States District Court for the Eastern District of Missouri denied a defendant in a condemnation action almost identical discovery as sought by defendant here. *See United States v. 236,696 Square Feet of Land,* No. 94:787SNL, Eastern District of Missouri, Eastern Division (attached as Appendix 1 to Plaintiff's Response in Opposition to Defendant Windsor Corporation's Motion for Order Compelling Discovery) (Doc. # 51).

III. *Discovery Relating To The Government's Precondemnation Valuation Of The Subject Property*

■ Pursuant to 42 U.S.C. § 4651, the government is required to conduct a precon-

demnation appraisal of the subject property. The government must then make a "prompt offer" of an amount which is "just compensation" for the property and which "in no event" shall be less than the "approved appraisal of the fair market value of such property." 42 U.S.C. § 4651(2)(3). Through correspondence from the United States to the defendant (copies attached as Exhibit "A" to this Order), the United States advised defendant that it had hired an independent appraiser who had concluded that as of March 8, 1995, the fair market value of the subject property was $1,465,000. Later correspondence from the United States to defendant increased the appraised fair market value of the property to $1,594,558, and the United States made a "best and final offer to purchase" the property for $1,754,014. When defendant rejected that offer, the United States filed this action and hired new appraisers who have now appraised the subject property substantially below the earlier government appraisal and offer. Defendant seeks discovery concerning the government's precondemnation appraisal and valuation of the subject property contending that, at worst, the discovery is relevant and possibly admissible at trial and, at best, the government's precondemnation valuations may be an admission against interest by the United States.

The United States argues that the requested discovery is unnecessary to supply defendant with appropriate comparable sales; that defendant may not use the opinions of a nontestifying expert (presumably the government-hired appraiser who did the precondemnation appraisal) to impeach the opinions of the government's testifying experts; that the discovery rules prohibit the discovery of "work product" absent a showing of "substantial need" which is not present here; and that the underlying statute, 42 U.S.C. § 4651, does not entitle the defendant to a copy of the precondemnation appraisal report. The United States also strenuously contends that, should the Court require production of precondemnation appraisals, it would have a "chilling effect" on presuit ne-

gotiations in condemnation cases and would discourage the government from commissioning true "fair market" appraisals precondemnation because of the government's concern that those appraisals could be discovered and used against the government in a later condemnation proceeding.

The Court is persuaded that defendant is entitled to discovery of the precondemnation appraisal and valuations by the United States. The discovery requests which the court is granting are specific, narrowly tailored and may well lead to admissible evidence of fair market value on the date of taking. The Court rejects the United States' argument that the precondemnation appraisal and offer based on the appraisal are in the nature of "settlement negotiations" which are not admissible and, therefore, should not be discoverable. Rather, under 42 U.S.C. § 4651, the precondemnation appraisal commissioned by the United States is designed to determine the fair market value of the property. Thus, unlike other presuit "settlement negotiations," the United States is required by statute to "lay its cards on the table" and disclose presuit what it believes to be the fair market value of the subject property. Thus, discovery of the appraisal which underlies the government's precondemnation assessment of fair market value should not impact settlement negotiations either before or after the filing of a condemnation action because the government is required by law in any event to perform such an appraisal.

The Court's decision is bolstered by a review of the relevant authorities.[1] In *United States v. 320.0 Acres of Land,* 605 F.2d 762, 822–25 (5th Cir.1979), the former Fifth Circuit (in a decision binding in the Eleventh Circuit absent a later Eleventh Circuit case), held that "statements of just compensation" provided to the landowner pursuant to 42 U.S.C. § 4651 "are admissible at a subsequent compensation [condemnation] trial as an admission, once it becomes known that at trial the Government is valuing the property at a lower figure." *Id.* at 825. This is so, the former Fifth Circuit stated, because the

---

1. Both the parties and the Court have uncovered authority from other circuits and jurisdictions which go both ways on this issue. Obviously, this Court is most interested in the law of this circuit.

statements of just compensation under the statute "presumably represent the appraised fair market value of the condemned property—precisely the question at issue in a compensation [condemnation] trial." *Id.* at 824. Rejecting all the government's arguments to the contrary, many of which are the same "privilege" and "settlement" arguments the United States makes here, the former Fifth Circuit concluded:

> "The Government is not completely free to play fast and loose with landowners—telling them one thing in the office and something else in the courtroom." *Id.* at 825.

While the former Fifth Circuit in *320.0 Acres of Land* does not specifically address whether the appraisal which underlies the statement of just compensation provided pursuant to § 4651 is discoverable, the Court's opinion strongly suggests that it is. Indeed, if the former Fifth Circuit believes that the evidence of the offer of just compensation, which is no doubt premised on the precondemnation appraisal, can be deemed an *admission* against the government at trial, the pretrial discoverability of the appraisal seems a foregone conclusion.

The Court recognizes that a later former Fifth Circuit case, *Hoover v. Department of the Interior*, 611 F.2d 1132, 1139, n. 8 (5th Cir.1980) appears to, without citing the *320.0 Acres of Land* case, approach the issue of disclosure of § 4651 documents differently in the Freedom of Information Act context. This Court finds the *320.0 Acres of Land* case more pertinent to the issue at hand and neither overruled nor contradicted by the *Hoover* decision. *See Local Union 48 Sheet Metal Workers v. S.L. Pappas & Company, Inc.*, 106 F.3d 970, 975 (11th Cir.1997) (under "prior panel decision rule," where there is a conflict between panel decisions within the circuit, earlier decision is binding until court decides issue *en banc*). *See also United States v. 22.80 Acres of Land*, 107 F.R.D. 20 (N.D.Cal.1985) (distinguishing *Hoover*, ordering production of government's precondemnation appraisal, finding that such appraisal is not protected from discovery by the work product privilege).

While making no holding that the § 4651 appraisal be considered an admission by the United States (an issue that the district court will have to decide pretrial), the undersigned does hold that general discovery principles, 42 U.S.C. § 4651 and case law construing it require that the defendant be permitted to discover this information.

Therefore, in complying with part III of this Order, the United States must answer Interrogatory No. 1 of Windsor Corporation's Third Set of Interrogatories, Document Request No. 1 of Defendant's Third Request for Production of Documents, Request for Admission No. 1 of Defendant's First Request for Admissions and Request for Admission No. 3 of Defendant's First Request for Admissions, all of which are contained in Exhibit C to Memorandum of Law in Support of Defendant Windsor Corporation's Motion for Order Compelling Discovery (Doc. # 41). The Court will not require the United States to answer Request for Admission No. 2 or No. 4, finding them to be improper requests for admission.

The United States must also produce the documents requested by Document Request No. 2 of Defendant's Third Request for Production of Documents, essentially seeking the precondemnation appraisal(s) and any updates thereof. The United States is not required to respond to Document Request No. 9 of Defendant's First Request for Production of Documents, that request being overbroad. See Exhibit D (Doc. # 41).

The Court will also require the United States to submit for deposition the appraiser for the Rogers Appraisal Group who performed the precondemnation appraisal and any updates. The Court will further require the United States to produce Janice K. Kuykendall for deposition **limited** to the issues contained in her correspondence of March 14, 1995 and April 5, 1996 and any matters reasonably relating thereto.

## IV. Conclusion

In compelling the discovery as set forth above, the Court is making no judgment about the ultimate admissibility of the information which will be gained by this discovery. Rather, the Court is merely finding that under the broad test of Fed.R.Civ.P.

26(b)(1), which allows discovery "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence," and given that the discovery is limited in scope and not intrusive or prejudicial, this discovery should be permitted to give defendant every legitimate opportunity to gather evidence which may bear on the issue of fair market value.

It is, therefore,

## ORDERED AND ADJUDGED:

1. Defendant Windsor Corporation's Motion for Order Compelling Discovery (Doc. # 40) is **granted** in part and **denied** in part as specifically stated in the appropriate sections of this Order.

2. The United States shall serve all discovery required under this Order no later than April 15, 1997.

3. The parties, by mutual agreement, will schedule the time and place for the taking of the depositions of the Rogers Group representative and Ms. Kuykendall; however, these depositions should not occur until the United States has provided all of the other discovery required under this Order. In any event, all discovery required under this Order, including depositions, must be completed by May 7, 1997.[2]

4. If the United States believes that a confidentiality agreement or protective order is required for any of the materials to be produced under this Order, the United States shall, within **ten (10) days** of the date of this Order, submit a proposed protective order (preferably having been agreed to by the defendant). If the government does not apprise the Court of the need for a confidentiality order, the Court will assume that there is no need for one.

5. At the hearing, the United States advised that it still wishes "Plaintiff's First Motion to Strike Defendant's Expert Witnesses Cantrell, Gilmore and Bruce" (Doc. # 42), to which defendant has responded (Doc. # 44), to be considered. However, because the depositions of the three experts who are the subject of the motion to strike have now been taken, the United States requested leave to supplement the motion to strike to include new argument. Therefore, the United States will file any supplement to the motion to strike no later than April 15, 1997, and the defendant will file any supplemental response thereto no later than April 28, 1997. The motion to strike (Doc. # 42) is **deferred** to the District Court.

6. Finally, the United States requested time to consider whether to file additional discovery motions based on this Court's order denying Plaintiff's First Motion for Protective Order (Doc. # 48). Therefore, the United States will have until March 31, 1997 to file any applicable discovery motions and defendant will have until April 15, 1997 to file any response thereto.

---

2. The parties advised the Court at the hearing that they did not intend to file any dispositive motions. Therefore, the conduct of the discovery required by this Order will not impinge upon the parties' ability to comply with the Case Management Order. Indeed, the next significant "event" in the case is the final pretrial conference set for May 27, 1997.