639 S.E.2d 693

STATE of West Virginia ex rel. STATE OF WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, a public corporation, and Fred Van Kirk, P.E., Secretary/Commissioner of Highways, Petitioners,

v.

The Honorable Donald H. COOKMAN, Judge of the Circuit Court of Hardy County and Fort Pleasant Farms, Inc., Respondents.

No. 33095.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 13, 2006.

Decided: Dec. 1, 2006.

Dissenting Opinion of Justice Davis Dec. 13, 2006.

Clarence E. Martin, III, Martin & Seibert, L.C., Martinsburg, John D. Athey, Keyser, for Petitioner.

James D. Gray, Steptoe & Johnson, PLLC, Clarksburg, Ancil G. Ramey, Steptoe & Johnson, PLLC, Charleston, Oscar M. Bean, Bean & Bean, Moorefield, for Respondent Fort Pleasant Farms, Inc.

BENJAMIN, Justice.

Petitioners, West Virginia Department of Transportation, Division of Highways, and Fred VanKirk, Secretary/Commissioner of Highways [hereinafter collectively "DOT"], instituted this original jurisdiction proceeding by filing a Petition for Writ of Prohibition on April 24, 2006, seeking an order from this Court prohibiting the enforcement of an April 13, 2006, order issued by the Circuit Court of Hardy County. In its April 13, 2006, Order, the Circuit Court of Hardy County compelled DOT to produce certain appraisal reports and other evaluations prepared by experts and/or consultants retained by DOT in connection with the underlying condemnation proceeding. On May 24, 2006,

this Court issued a Rule to Show Cause why the requested writ of prohibition should not be awarded. Upon due consideration of the arguments of counsel and the pertinent legal authorities, we now grant the requested writ, as moulded.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In June 2004, DOT condemned 48.24 acres of property owned by Respondent Fort Pleasant Farms, Inc. ["Fort Pleasant"] in Hardy County, West Virginia, for use in the construction of Corridor H, a federally assisted highway project. Civil action number 04–C–51 was instituted in the Circuit Court of Hardy County to determine the appropriate compensation for this governmental taking. It appears from the limited record before this Court that the 48.24 acre tract of property at issue is a portion of a 160 acre tract owned by Fort Pleasant and contains a significant fine, fissel shale deposit.[1]

Not surprisingly, the parties' evaluations of the value of the property taken and damage to the residue differ significantly.[2] After a commissioners' hearing was held on December 14 and 15, 2005, a report was issued valuing the taking and residue damage at $1,100,600.00. Both parties filed exceptions

to the commissioners' report with the circuit court. In addition, Fort Pleasant filed a motion to compel answers to its October 27, 2005, discovery requests with the circuit court. The October 27, 2005, discovery requests consisted of the following two interrogatories:

**INTERROGATORY NO. 1:** Identify each and every expert witness or potential expert witness Petitioner or its counsel have consulted or communicated with in any fashion and/or retained in connection with this case, whether or not Petitioner intends to use or call such persons as a witness, who have not been previously disclosed. **INTERROGATORY NO. 2:** Have any of the persons identified as expert appraisal witnesses or potential expert appraisal witnesses appraised other properties for the Petitioner of a similar nature (properties having a highest and best use as residential, commercial and/or industrial development properties), which are located within one-half mile of the subject? If so, identify each such person and provide a copy of all appraisal reports as to each of said properties.

DOT responded to the October 27, 2005 discovery requests with objections. In response to the first interrogatory, DOT objected on the basis that the request was beyond the scope of permissible discovery.[3] DOT ob-

---

1. In its Response to the Petition for Writ of Prohibition, Fort Pleasant states that the 48.24 acres taken severs its property diagonally, landlocking 13.58 acres of property. Additionally, Fort Pleasant represents that the taking included approximately 2.5 million yards of fine, fissel shale in a DOT designated quarry area.

2. It appears from the limited record before this Court that DOT valued the property taken at several hundred thousand dollars while Fort Pleasant claimed a value of several million dollars.

3. Specifically, DOT stated the request was:
   beyond the scope of discovery pursuant to Rule 26(b)(4)(B) of the West Virginia Rules of Civil Procedure. A request for information concerning potential expert witnesses is beyond the scope of discovery, violates the attorney-work product, and may also violate the attorney-client privilege. A party may not discover facts known or opinions held by an expert who has been retained or specifically employed by the Petitioners in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial, except as provided

in Rule 26(b)(4)(A) and (B) of the West Virginia Rules of Civil Procedure.

The same request had been posed in Interrogatory No. 2 of Fort Pleasant's November 2004 discovery requests. At that time, DOT responded, without objection, and disclosed nine individuals. When questioned regarding the prior response during oral argument, counsel for DOT indicated that the prior requests had been withdrawn. Though Fort Pleasant acknowledged withdrawing Interrogatory No. 4 from its November 2004 requests in its brief before this Court, Fort Pleasant was silent both in its brief and at oral argument regarding the withdrawal of Interrogatory No. 2 of the November 2004 requests and did not argue that the objection had been waived by the initial response. Similarly, Interrogatory No. 4 of the November 2004 requests is identical to Interrogatory No. 2 of the October 27, 2005, requests with the exception that in 2004 information was sought regarding properties within a one-mile radius of the subject property, rather than the one-half mile radius specified in the October 27, 2005, requests.

jected to the second request on the basis that it sought the provision of appraisals and other personal information of non-parties in violation of their right to privacy, that it exceeded the scope of permissible discovery, that it was irrelevant, immaterial, burdensome and not reasonably calculated to lead to the discovery of admissible evidence, and that it sought materials subject to the attorney-client privilege and/or prepared in anticipation of litigation.

In addressing Fort Pleasant's motion to compel the discovery and DOT's objections thereto, the circuit court entered its April 13, 2006, order finding the information sought was relevant, was not unduly burdensome and that it constituted proper discovery. Although finding the information discoverable, the circuit court noted that the extent to which such information may be utilized at trial was a different issue. In granting Fort Pleasant's motion over DOT's objections, the circuit court ordered DOT to immediately produce to Fort Pleasant:

> (1) copies of all appraisal reports and other evaluations, of or relating to the subject property, prepared for Petitioners [DOT] by all experts and consultants, *whether or not said persons or firms will or may be witnesses in this proceeding;* and
>
> (2) copies of all appraisal reports and evaluations pertaining to other properties acquired for the subject Corridor H project, which are located within one-half mile of the subject property, conducted twelve-months before or after the date of take of the subject property and prepared by those persons who are designated or may be designated by the Petitioners [DOT] as witnesses in this action.

(Emphasis added).

Shortly after entry of the circuit court's order, DOT petitioned this Court for a writ of prohibition. In its petition, DOT argued that the circuit court exceeded its legitimate powers and abused its discretion by ordering the production of appraisal reports and other evaluations performed by persons not designated as witnesses in the underlying condemnation case. DOT also contended that the circuit court improperly ordered the production of appraisal reports and evaluations pertaining to other properties.

## II.

### STANDARD OF REVIEW

■ Pursuant to West Virginia Code § 53–1–1 (1923), a "writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Addressing the available scope of a writ of prohibition, this Court has held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

■ In the instant matter, DOT argues that the circuit court exceeded its legitimate powers and abused its discretion by ordering the production of certain appraisals and other evaluations in the underlying condemnation action. This Court has previously held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992). Further,

> [a] circuit court's ruling on discovery requests is reviewed for an abuse of discretion standard; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. The discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard.

Syl. Pt. 5, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003). *See also*, Syl. Pt. 4, *State ex rel. Wausau Business Ins. Co. v. Madden*, 216 W.Va. 776, 613 S.E.2d 924 (2005); Syl. Pt. 2, *State ex rel. Erie Prop. & Cas. Ins. Co. v. Mazzone*, 218 W.Va. 593, 625 S.E.2d 355 (2005). With these standards guiding our determination, we now consider the request for issuance of the writ of prohibition herein.

## III.

## DISCUSSION

Finding solely that Fort Pleasant's requests constituted "proper discovery," the circuit court ordered DOT to produce two distinct categories of documents. First, DOT was ordered to produce copies of all appraisal reports and other evaluations relating to the Fort Pleasant property prepared by all experts and/or consultants whether or not those persons "will or may be witnesses" in the condemnation action. Thus, the circuit court ordered production of appraisal reports and other evaluations made on behalf of DOT regardless of the preparer's role in the litigation. Secondly, the circuit court ordered production of any appraisal reports or other evaluations prepared by a person who is or may be designated by DOT as a witness in the Fort Pleasant condemnation action and which: (1) pertain to properties located within one-half mile of the Fort Pleasant property; (2) were taken in relation to the Corridor H project; and (3) were conducted within the twelve months before and after the taking of the Fort Pleasant property. With respect to the production of appraisal reports and other evaluations relating to those other properties, the circuit court apparently did not consider whether the other properties were involved in on-going condemnation proceedings or the preparer's role in any such proceedings.

Both before the circuit court and before this Court, DOT argues that Fort Pleasant has not satisfied its burden of showing the "exceptional circumstances" required by Rule 26(b)(4)(B) of the *West Virginia Rules of Civil Procedure*, to permit the production of materials prepared by consultants and non-testifying experts. Therefore, DOT maintains the materials ordered to be produced are not properly discoverable. Rule 26(b)(4)(B) provides:

> (b) *Discovery Scope and its limits.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> > (4) Trial preparation: experts.—Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> · · ·
>
> (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

In seeking to obtain discovery from or regarding experts or consultants not designated as witnesses in the condemnation action, Fort Pleasant bears the burden of demonstrating the existence of exceptional circumstances justifying such discovery. *Michael v. Henry*, 177 W.Va. 494, 498, 354 S.E.2d 590, 594 (1987). Fort Pleasant maintains that exceptional circumstances exist due to the "unique" nature of condemnation proceedings, the application of the Uniform Relocation Assistance and Real Property Acquisition Properties Act,[4] the complexities of the

4. West Virginia incorporated the Uniform Relocation Assistance and Real Property Acquisition Properties Act, 42 U.S.C. § 4601, *et seq.*, into our law through the Legislature's adoption of Chapter 3, Article 54 of the *West Virginia Code*. This Act applies to all state eminent domain proceedings undertaken in relation to projects which have received federal assistance. The Act requires state agencies to follow federal law in relation to the takings. *See* W. Va.Code § 54–3–3 (1988). Similarly, W. Va.Code § 17–2A–20 (1988), requires compliance with federal law where property is taken by condemnation pro-

ceedings for the construction of a highway project receiving federal funding.

Under federal law, an agency seeking to take land through condemnation proceedings must, prior to the initiation of condemnation proceedings, seek to purchase the property through negotiations and conduct a pre-negotiation appraisal. 42 U.S.C. § 4651(1)-(2) (1987). Pursuant to 42 U.S.C. § 4651(3), an agency seeking to take land through condemnation proceedings must, before the initiation of negotiations "establish an amount which [it] believes to be just compensation therefor and shall make a prompt offer to

condemnation action and the relevance of the requested materials to the proceedings. Conversely, DOT argues that federal law requires the appraisals and/or evaluations ordered to be produced to remain confidential.[5] DOT argues that Fort Pleasant's experts may conduct their own evaluations of the Fort Pleasant and near-by properties.

[7] It is not necessary, however, for this Court to resolve the parties' disagreement over the application of federal law regarding the disclosure of appraisals and other evaluations or whether condemnation proceedings themselves constitute exceptional circumstances for the purposes of Rule 26(b)(4)(B), in order to determine whether we should prohibit the enforcement of the circuit court's April 13, 2006, discovery order. Finding only that the information sought constituted "proper discovery" and that production of the same was not "unduly burdensome," the circuit court made no findings regarding the presence or absence of "exceptional circumstances" warranting the production of discovery relating to non-testifying experts and/or consultants or the interplay of federal law with the parties' discovery obligations. Although a circuit court is ordinarily afforded discretion in issuing discovery orders, deference to the exercise of such discretion "does not apply where the [circuit] court makes no findings or applies the wrong legal standard." Syl. Pt. 5, in part, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80 (2003). Without specific findings of fact or law regarding the existence of "exceptional circumstances" or even a mention of the consideration of the requirements of Rule 26(b)(4)(B) in the circuit court's order, we are left to speculate as to the circuit court's reasons for

ordering the disclosure of information from experts and/or consultants who have not been designated as expert witnesses in the instant condemnation action.

■ While federal law and the nature of condemnation actions arguably may be proper considerations in determining the existence of exceptional circumstances warranting the production of information from non-testifying experts or consultants, those issues are not properly before this Court because the circuit court did not address the same. As this Court stated in *State ex rel. United States Fidelity and Guaranty Company v. Canady,* 194 W.Va. 431, 440, 460 S.E.2d 677, 686 (1995),

> [i]t is a traditional and salutary practice of this Court to decline to answer important policy questions in original jurisdiction proceedings until the lower court has the opportunity to provide us with the full and established circumstances of the case. . . . Only when a circuit court makes adequate findings can the impact of certain privileges upon individual litigants be reviewed with confidence that relevant considerations were not overlooked.

This Court has likewise recognized that "[i]n exercising original jurisdiction in a petition for writ of prohibition, it is not our task merely to decide who is right or wrong or what the law is. Rather, our primary obligation is to determine whether the lower judicial tribunal acted in excess of its authority." *Canady,* 194 W.Va. at 440, n. 11, 460 S.E.2d at 686, n. 11.

■ In the instant matter, the circuit court ordered the production of information from non-testifying experts and/or consul-

---

acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. . . . [the agency must also] provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount [it] established as just compensation."

5. According to DOT, federal law requires only that a summary of the pre-condemnation appraisal findings be disclosed to the landowner and that 49 C.F.R. 24.9(b) (2005) requires the pre-condemnation appraisal itself to remain confidential. 49 C.F.R. 24.9(b), provides "records

maintained by an Agency in accordance with this part are confidential regarding their use as public information, unless applicable law provides otherwise." Conversely, Fort Pleasant argues the document retention provisions set forth in 49 C.F.R. 24.9(a) are for the purpose of keeping the records available for discovery in litigation and that litigation discovery qualifies as an "applicable law" exception under 49 C.F.R. 24.9(b). Based upon the limited record before this court, which consists solely of the circuit court's order and DOT's responses to the two sets of discovery requests, it does not appear that the application of federal law was raised before the circuit court.

tants over the objection of DOT and without the requisite finding required by Rule 26(b)(4)(B) that exceptional circumstances exist warranting the production of such material. Having failed to address the application of Rule 26(b)(4)(B)'s exceptional circumstance requirement, the circuit court likewise precluded proper review of its April 13, 2006 order by this Court. In order to facilitate future review of orders requiring the production of discovery from or regarding non-testifying experts or consultants, we now specifically hold that a circuit court is required, pursuant to Rule 26(b)(4)(B) of the *West Virginia Rules of Civil Procedure*, to make specific findings regarding the existence of exceptional circumstances justifying the discovery of facts known or opinions held by an expert or consultant who has been retained or specially employed by a party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial before the circuit court may compel such discovery over a party's objection. Accordingly, we now grant the requested writ and prohibit the enforcement of the circuit court's April 13, 2006, order to the extent it compels the production of appraisal reports and other evaluations prepared by persons who have not been designated as DOT witnesses in the underlying condemnation matter.

The circuit court also ordered production of appraisal reports or evaluations prepared during a specific time period by persons who have been or may be designated as witnesses in the instant action relative to properties located within a one-half mile radius of the Fort Pleasant property and which were taken relative to the Corridor H project. DOT objects to production of this material on a myriad of grounds, including that the material is subject to the attorney-client privilege and/or prepared in anticipation of litigation. Conversely, Fort Pleasant argues that the circuit court's order requiring production of this material was proper because such information is relevant for cross examination purposes, including to disclose potential variances in the witness's methodology and opinions relative to different properties.

We agree that discovery of appraisal reports and evaluations prepared by designated witnesses relative to other properties may be discoverable information in appropriate circumstances.[6] However, we find that given its breadth, the circuit court's order lacked the appropriate findings to unconditionally order the disclosure of this information. The circuit court's order contains no findings regarding the role of persons designated as witnesses in the instant action when preparing an appraisal report or other evaluation of other properties. A designated witness in the instant action may have produced an appraisal report or other evaluation in the role of consultant or non-testifying expert relative to the other property. In such a case, discovery of the appraisal report or other evaluation of the other property would be subject to a finding of exceptional circumstances under Rule 26(b)(4)(B). For instance, the exceptional circumstance requirement may be satisfied by a showing that such appraisal report or evaluation of the other property is relevant because of its use or potential use by a witness in the instant action as a comparative to the Fort Pleasant property such as when it is relied upon by the witness in formulating the witness's opinion relative to the Fort Pleasant property. Absent a finding that the required disclosures were prepared by testifying experts or consultants or that a finding of exceptional circumstances has been met, their discovery may not be compelled.

---

**6.** The *West Virginia Rules of Civil Procedure* do not currently provide for the automatic disclosure of expert reports and information regarding other litigation in which testifying experts have been involved. However, discovery of materials relied upon by an expert witness in formulating an opinion are often discoverable. In this respect, we observe that under Rule 26(a)(2) of the *Federal Rules of Civil Procedure*, a party is required to, among other things, identify all testifying experts, produce detailed reports from each testifying expert, disclose each testifying expert's compensation and disclose all cases in which the witness has testified as an expert at trial or by deposition in the preceding four years. Thus, the *Federal Rules* would mandate disclosure of information similar to that sought by Fort Pleasant herein. While we recognize the potential benefits of the Federal Rules in this regard, we do not believe that a petition seeking extraordinary relief is the proper mechanism for consideration of changes to our rules of civil procedure. For now, we leave it to the judges of our state to determine whether to require more of litigants under Rule 26 in cases pending before them.

Accordingly, we grant the requested writ of prohibition relative to the disclosure of appraisal reports and other evaluations of properties located within one-half mile of the Fort Pleasant property which were prepared by witnesses designated in the instant action to the extent those witnesses were acting as non-testifying experts or consultants when preparing the appraisal report or other evaluation. In such circumstances and with proper findings, a determination of exceptional circumstances is required before the appraisal reports and other evaluations may be discovered. To the extent the circuit court's April 13, 2006, order requires the disclosure of appraisal reports and evaluations of other properties prepared by witnesses designated in the instant action and those designated witness were acting in the role of testifying expert or consultant when preparing the same, the April 13, 2006, order is enforceable by the circuit court.

Upon the return of this matter to the Circuit Court of Hardy County, Fort Pleasant may renew its motion to compel the production of appraisal reports and other evaluations prepared by persons who have not been designated as DOT witnesses in the underlying condemnation matter and to compel the disclosure of appraisal reports and other evaluations of properties which were prepared by witnesses designated in the instant action who were acting as non-testifying experts or consultants when preparing the appraisal report or other evaluation. Should Fort Pleasant renew its motion, the circuit court must hold a hearing and make the appropriate findings regarding the existence of exceptional circumstances, as outlined herein, before it may compel the production of such materials.

## IV.

### CONCLUSION

The Circuit Court of Hardy County is hereby prohibited from enforcing its April 13, 2006, order requiring the disclosure of appraisal reports and other evaluations of the Fort Pleasant property prepared by persons or firms retained by DOT and not designated as witnesses in the underlying condemnation action because the circuit court failed to make the requisite finding of exceptional circumstances as required by Rule 26(b)(4)(B) of the *West Virginia Rules of Civil Procedure*. Likewise, the Circuit Court of Hardy County is prohibited from enforcing its April 13, 2006, order to the extent it requires disclosure of appraisal reports and evaluations of non-Fort Pleasant property prepared by witnesses designated in the instant action who served as a non-testifying expert or consultant when preparing the appraisal report or evaluation absent the requisite finding of exceptional circumstances as required by Rule 26(b)(4)(B) of the *West Virginia Rules of Civil Procedure*. Upon a renewed motion by Forth Pleasant to compel such materials, the circuit court must make specific findings regarding the existence of exceptional circumstances justifying their discovery before ordering the same to be produced.

## WRIT GRANTED, AS MOULDED

STARCHER, J., concurring, in part, and dissenting, in part.

I concur in the new Syllabus Point 4 of the majority opinion, which correctly summarizes the requirements of the *West Virginia Rules of Civil Procedure,* Rule 26(b)(4)(B).

However, I dissent to the majority's method of application of this rule to the State of West Virginia as a litigant in the instant condemnation case.

In condemnation cases, the government is the proverbial 800–pound gorilla. It can take your property, period; and the only issue is how much the property is worth. In these lopsided circumstances, a property owner is entitled to *anything* that can help make the case for full compensation. These are inherently "exceptional circumstances."

Moreover, government is supposed to be transparent. Secrecy is the exception in the doing of governmental business. If people want to be private in conducting their business affairs, then they should stay out of government. Citizens have an absolute right to know how a government arrived at a suggested price for land, including advice that experts told the government—but that the government decided not to follow.

The Department of Transportation's "secrecy policy" on what other appraisers told them suggests that the DOT thinks they are dealing with port security, instead of what a citizen is due for his property.

Accordingly, I concur, in part, and dissent, in part.

DAVIS, C.J., dissenting.

(Filed Dec. 13, 2006)

The majority's resolution of this original jurisdiction proceeding is simply wrong on all counts. First, the majority incorrectly concluded that it was not necessary to address federal law to resolve the issues raised in this case. Second, the majority erroneously determined that pre-condemnation appraisal reports prepared by non-testifying expert witnesses in condemnation proceedings related to a federally assisted highway project may not be obtained by the condemnee. Third, the majority failed to recognize that appraisal reports for properties not owned by the condemnee, but that are also being acquired by a state agency in relation to a federally assisted project, are confidential. Fourth, the majority's basis for allowing discovery of appraisal reports for properties not owned by the condemnee under the rules of civil procedure is legally unsound. Finally, the new syllabus point adopted in the majority opinion imposes an unnecessary burden on trial courts. I will address each of these defects in turn.

## I.

### PRE–CONDEMNATION APPRAISAL REPORTS PERTAINING TO CONDEMNEE'S PROPERTY

#### A. Application of Federal Law

The majority opinion concluded that it was not necessary to address federal law in re-

solving the issues raised in this original jurisdiction proceeding because the circuit court's order failed to demonstrate any reliance on federal law by that court in its determination of the issues presented. On the contrary, the issues raised in this proceeding must be resolved by federal law.[1]

The instant proceeding arose from the condemnation of Fort Pleasant's property in connection with the Corridor H project of the West Virginia Department of Transportation, Division of Highways (hereinafter referred to as "the DOH"). The Corridor H project is a federally assisted highway project subject to the Uniform Relocation Assistance and Real Property Acquisition Policies Act, found at 42 U.S.C. § 4601, *et seq.* (hereinafter referred to as "the Federal Act"). Pursuant to the Federal Act, federal funding and approval of state programs is available only where the state agency provides assurances that, "in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title ...." 42 U.S.C. § 4655(a)(1) (1987) (2000 ed.).[2] With respect to the requirement that states comply with federal law to the "greatest extent practicable under State law," it has been observed that "by 'practicable' Congress intended to have the grant recipient comply with the [42 U.S.C.] § 4651 procedures to the fullest extent to which it is legally capable of complying under state law." *City of Columbia, S.C. v. Costle,* 710 F.2d 1009, 1013 (4th Cir.1983) (citations

**1.** The fact that the circuit court's order was silent as to the rationale for it's decision is of no moment, as the issues raised to this Court are legal, not factual. This Court is not bound by the legal grounds relied upon by a circuit court. *Cf Murphy v. Smallridge,* 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support."). *See also infra* § III of this dissent (explaining that circuit court was not required to make findings in an interlocutory order).

**2.** 42 U.S.C. § 4655(a)(1) (1987) (2000 ed.) states in full:

(a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—

(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title ....

omitted).[3] Plainly, then, unless there is some impediment to compliance under state law, the DOH is required to fully comply with the provisions of 42 U.S.C. § 4651 when acquiring real property for a project for which it receives federal funding.

Rather than creating an impediment to the application of the Federal Act, W. Va.Code § 54–3–3 (1988) (Repl.Vol.2000) requires acquiring agencies [4] to adopt rules and regulations to implement its provisions, and grants such agencies the power and authority to do the same: [5]

> In order to accomplish the purposes set forth in section two of this article and to satisfy the requirements of adequately compensating displaced persons under such federal acts, each acquiring agency is *hereby required* and is hereby granted plenary power and authority to adopt rules and regulations, which shall have the force and effect of law, *to implement the provisions of such federal acts and make applicable to such acquiring agency the policies and requirements of such federal acts which are pertinent to the mission and functions of such acquiring agency,* including, without in any way limiting the generality of the foregoing, the carrying out of all procedures and the making of all financial assistance payments, relocation assistance payments, replacement housing payments, loans and expense reimbursement payments required by such federal acts, *subject only to any restrictions or limita-*

*tions imposed by the constitution of the state of West Virginia....*

(Emphasis added). *See also Huntington Urban Renewal Auth. v. Commercial Adjunct Co.,* 161 W.Va. 360, 367, 242 S.E.2d 562, 566 (1978) ("State agencies receiving federal financial assistance must give federal authorities satisfactory assurances that in acquiring real property they will be guided, to the greatest extent practicable under State law, by this policy. 42 U.S.C. 4655 (1971). To carry out the federal mandate, the Legislature enacted W. Va.Code, 54–3–3 [1972] which makes the federal real property acquisition policies applicable to state agencies and gives state agencies 'plenary power and authority to adopt rules and regulations, which shall have the force and effect of law, to implement the provisions of ... [the] federal act ...' ").

Thus, the foregoing demonstrates that, contrary to the majority's conclusion, consideration of federal law is necessary to resolve the issues raised in connection with this petition for writ of prohibition.

**B. Pre-condemnation Appraisal Reports Pertaining to Property That Is Subject of Condemnation Proceedings Are Discoverable**

In accordance with the preceding section, to properly determine whether the DOH should be required to turn over the requested appraisal reports pertaining to Fort Pleasant's property requires examination of the Federal Act.

---

3. In *City of Columbia, S.C. v. Costle,* 710 F.2d 1009 (4th Cir.1983), the city argued "that the § 4651 procedures, by requiring the city to inform the landowner of the appraised value of the easement, will chill its ability to obtain easements by gift or at a nominal cost through negotiation." 710 F.2d at 1013. Rejecting the city's argument, the court reasoned that
   § 4655 embodies an unambiguous indication that Congress, after weighing the various policy considerations, concluded that compliance with the § 4651 procedures should not be left to the grant recipient's own judgment as to its economic best interests. We therefore conclude that the state must comply with § 4651 to the greatest extent legally possible under state law, notwithstanding that such compliance may be "uneconomical."
   *Id.* at 1013–14.

4. The term "acquiring agency" "means the state of West Virginia or any department, agency or

instrumentality thereof, or any county, municipality or other political subdivision thereof or any department, agency or instrumentality of two or more states or of two or more political subdivisions of a state or states, and any person carrying out a program or project with federal financial assistance which causes a person to be a displaced person within the intent and meaning of the federal act." W. Va.Code § 54–3–1(2) (1990) (Repl.Vol.2000).

5. Notably, Article 3 of Chapter 54 of the West Virginia Code is titled "IMPLEMENTATION OF UNIFORM RELOCATION ASSISTANCE AND REAL PROPERTY ACQUISITION POLICIES ACT OF 1970 AND THE 1987 AMENDMENTS THERETO KNOWN AS TITLE IV OF THE SURFACE TRANSPORTATION AND UNIFORM RELOCATION ASSISTANCE ACT OF 1987."

The discoverability of pre-condemnation appraisal reports was squarely addressed by the United States District Court in a condemnation case styled *Washington Metropolitan Area Transit Authority v. One Parcel of Land in Prince George's County, Maryland,* 342 F.Supp.2d 378 (2004). In that case, like the instant case, the defendant landowners made discovery requests seeking the identity of the pre-condemnation appraiser and a copy of the original appraisal report that formed the basis the acquiring agency's determination of just compensation. The Washington Metropolitan Area Transit Authority (hereinafter "WMATA"), the acquiring agency, argued that, under Rules 26(b)(3) and 26(b)(4)(B) of the Federal Rules of Civil Procedure, the defendant landowners were required to "show a 'substantial need' or 'exceptional circumstances' in order to compel discovery." *One Parcel of Land in Prince George's County* 342 F.Supp.2d at 380. The district court disagreed, reasoning persuasively that:

> Section 4651(2) requires WMATA to secure a pre-condemnation appraisal. The introductory paragraph of § 4651 explains that the purpose of the provision is "to encourage and expedite the acquisition of real property by agreements with owners, *to avoid litigation* and relieve congestion in the courts[.]" 42 U.S.C. § 4651 (emphasis added). Section 4651(3) requires the Government to make an offer to acquire the property and the clearly stated purpose of this provision is the avoidance of litigation. *Id.; see also* 27 Am.Jur.2d Eminent Domain § 441 (2004) ("The purpose of a statutory requirement that a public body engage in bona fide negotiations with the owner prior to condemning is to encourage public entities to acquire property without litigation, thereby saving both the public and the condemnee the expense and delay of a court action, while permitting the landowner to receive just compensation."). Therefore, this Court concludes, as a matter of law, that the offer and the underlying appraisal cannot be considered "documents and tangible things ... prepared in anticipation of litigation [.]" Fed.

R.Civ.P. 26(b)(3). To conclude otherwise would thwart the intent of Congress in its establishment of a mandatory process specifically designed to avoid litigation. A process designed to avoid litigation can hardly be said to be one in anticipation of litigation.

> Because Rules 26(b)(3) and 26(b)(4)(B) do not protect this discoverable material, the governing rule is Rule 26(b)(1). This liberal rule permits discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R.Civ.P. 26(b)(1). Perhaps most important, this Rule also states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id; see also United States v. Block 44 Lots 3, 6,* 177 F.R.D. 687, 691 (M.D.Fla.1997) (concluding, in a case involving similar facts, that "general discovery principles, 42 U.S.C. § 4651 and case law construing it require that the defendant be permitted to discover this information.") Thus, the pre-condemnation appraisal is discoverable, as is information gleaned from discovery aimed at the appraiser's methods and conclusions.

*One Parcel of Land in Prince George's County* at 380–81.[6] Notably, W. Va.Code § 54–3–2 (1972) (Repl.Vol.2000), expresses the same purpose of avoiding litigation as does the language of the introductory paragraph of 42 U.S.C. § 4651. In this regard, W. Va.Code § 54–3–2 states:

> [t]he purposes of this article are (1) to require the establishment of a uniform policy for the fair and equitable treatment by state agencies of persons displaced from property in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole and (2) *to encourage and expedite the acquisition of real property or any interest therein by agreements with persons so as to avoid litigation and relieve congestion in the courts, to assure consistent treatment of persons and promote public confidence in the land acquisition practices of any state agency.*

---

6. *But see Wise v. U.S.,* 369 F.Supp. 30, 32 (D.C.Ky.1973) (commenting that "[t]he language of 42 U.S.C. § 4651 does not entitle plaintiff to a copy of the appraisal of his property, which was made by ... the [government's] appraiser ...").

Applying the analysis of the *One Parcel of Land in Prince George's County* court to the instant matter, as a matter of law the pre-condemnation appraisals obtained by the DOH in compliance with the Federal Act are not documents prepared in anticipation of litigation. Like the federal rules, West Virginia Rules of Civil Procedure 26(b)(3) and 26(b)(4)(B) protect information created "in anticipation of litigation." [7] Because the pre-condemnation appraisal reports were not created in anticipation of litigation, they are subject to discovery under Rule 26(b)(1), regardless of whether the preparing expert will testify in the condemnation proceedings. Accordingly, the majority erred in granting a writ of prohibition to prohibit discovery of pre-condemnation appraisal reports pertaining to Fort Pleasant's own property. *See United States v. Block 44*, 177 F.R.D. 692 (M.D.Fl.1997) (concluding that magistrate judge did not err in granting motion to compel discovery of government's pre-condemnation valuation of property).

### B. Admissibility of pre-condemnation appraisal reports

This Court has never addressed the admissibility of pre-condemnation appraisal reports. However, the United States District Court, in its *One Parcel of Land in Prince George's County* opinion, found pre-condemnation appraisal reports, along with the testimony of the appraiser who prepared the reports, to be admissible so long as the fact that the appraiser had been employed by the state was not revealed to the fact finder. 342 F.Supp.2d 378, 382. The *One Parcel of Land in Prince George's County* court reasoned that

> There is nothing that would preclude such evidence [the pre-condemnation appraisal report], but in order to avoid prejudice, the

Court concludes that the appropriate course is to allow the appraiser to be subpoenaed to testify by the Defendants and to allow his appraisal to be admitted, but to exclude any reference to the appraiser's original employer as well as any evidence of the § 4651 determination. Support for this conclusion is found in two earlier decisions of this Court.

In *WMATA v. One Parcel of Land in Prince George's County, Maryland, et al.*, 424 F.Supp. 218 (D.Md.1976), this Court determined that a government appraiser could be called to the stand during trial, but it also cautioned that counsel was not permitted to inquire about the appraiser's employer. *Id.* at 219. The Court reiterated this holding two years later in *WMATA v. One Parcel of Land in Prince George's County, Maryland*, 450 F.Supp. 122 (D.Md.1978), stating that "[a]t trial defendants may call [the government appraiser] but may not bring to the jury's attention the fact that he was originally employed by the Government." *Id.* at 124. Although WMATA did not raise the current objections in the earlier cases, that fact does not disturb the soundness of the prior rulings of this Court.

Therefore, this Court will exercise its discretion and permit the admission of the report and the testimony of the appraiser, but exclude reference to the appraiser's relationship to the government . . . .

*Id.*[8]

## II.

## APPRAISAL REPORTS PERTAINING TO NEARBY PROPERTY NOT OWNED BY FORT PLEASANT

Fort Pleasant also sought to discover appraisal reports for similar properties within

---

**7.** West Virginia Rule of Civil Procedure 26(b)(3) is identical to its federal counterpart. Although, as noted *infra* in § II(B)of this dissent, West Virginia Rule 6(b)(4)(B) differs from its federal counterpart, both rules do identically allow that "[a] party may" "discover facts known or opinions held by an expert who has been retained or specially employed by another party *in anticipation of litigation* or preparation for trial and who is not expected to be called as a witness . . . ." "Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own

rules." *Hardwood Group v. Larocco*, 219 W.Va. 56, 61 n. 6, 631 S.E.2d 614, 619 n. 6 (2006) (citing *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules." (citations omitted))) (additional citations omitted).

**8.** In reaching its conclusion, the *One Parcel of Land* court observed that the Fourth Circuit had

one-half mile of its property that were prepared by expert appraisal witnesses or potential expert appraisal witnesses in the instant case. I disagree with the majority's disposition of this issue on two grounds: (A) the relevant regulation plainly states that the appraisal reports are confidential; and (B) the majority's basis for providing potential disclosure is legally unsound.

### A. Appraisal Reports for Other Properties Are Confidential

The DOH argued to this Court that appraisal reports for properties other than the defendant's property are confidential records not subject to discovery. I agree. 49 C.F.R. § 24.9(a) requires a government agency [9] that acquires real property to maintain records to establish its compliance with the Federal Act.[10] However, these records are confidential:

> Confidentiality of records. Records maintained by an Agency in accordance with this part are confidential regarding their use as public information, unless applicable law provides otherwise.

49 C.F.R. § 24.9(b).[11] As the DOH correctly notes, only one court has addressed this regulation. In City of Reno v. Reno Gazette–

Journal, 119 Nev. 55, 63 P.3d 1147 (2003), a local newspaper sought to obtain, inter alia, copies of appraisal documents for real property to be acquired from various landowners in furtherance of a public works project in the city of Reno. The project was "classified as a federal highway project"; therefore, the city was required to comply with the Federal Act. City of Reno at 57, 63 P.3d at 1148. Relying on the plain meaning of 49 C.F.R. § 24.9(b), the Supreme Court of Nevada concluded that "this regulation plainly makes records involved in the acquisition of real property for federally funded programs confidential, and not public information, unless there is a law providing that they are not confidential." 119 Nev. at 60, 63 P.3d at 1150. (Emphasis added). The newspaper unsuccessfully argued that "the acquisition and relocation records are public records and are required to be open for inspection under the Nevada Public Records Act." [12] 119 Nev. at 57–58, 63 P.3d at 1148. Rejecting this argument, the Supreme Court of Nevada observed that

> [t]he Nevada Public Records Act merely provides that public records that are not "declared by law to be confidential," must

---

9. See 49 C.F.R. § 24.2.(a)(1) (defining the term "Agency" as "the Federal Agency, State, State Agency, or person that acquires real property or displaces a person.").

concluded that a pre-condemnation offer was not admissible into evidence "because '[t]o permit the offer to be received in evidence in effect would put a floor on recoveries in condemnation proceedings.'" Washington Metro. Area Transit Auth. v. One Parcel of Land in Prince George's County, Maryland, 342 F.Supp.2d 378, 381 (2004) (quoting WMATA v. One Parcel of Land in Montgomery County, Maryland, et al., 548 F.2d 1130, 1131 (4th Cir.1977)). But see United States v. Block 44, Lots 3, 6, 177 F.R.D. 692 (M.D.Fla. 1997) (finding no error in magistrate's order granting motion to compel discovery of pre-condemnation offers to purchase).

The One Parcel of Land court also observed that the Fifth Circuit had found that the written statement summarizing the amount established as just compensation, which is required by 42 U.S.C. § 4651(3), was admissible. One Parcel of Land in Prince George's County, 342 F.Supp.2d at 381. The court explained that the Fifth Circuit "considered a § 4651 statement not to be an offer of compromise excludable under Federal Rule of Evidence 408, but rather a " 'statement" of the "amount ... established as just compensation[,]" ' " and therefore admissible. Id. at 382.

10. 49 C.F.R. § 24.9(a) states:

> (a) Records. The Agency shall maintain adequate records of its acquisition and displacement activities in sufficient detail to demonstrate compliance with this part. These records shall be retained for at least 3 years after each owner of a property and each person displaced from the property receives the final payment to which he or she is entitled under this part, or in accordance with the applicable regulations of the Federal funding Agency, whichever is later.

11. 49 C.F.R. § 24.9(b) refers to records "maintained by an Agency." (Emphasis added). 49 C.F.R. § 24.2(a)(1) defines the term "Agency" as "the Federal Agency, State, State Agency, or person that acquires real property or displaces a person," and 49 C.F.R. § 24.2(a)(1)(iv) defines "State Agency," in relevant part, as "any department, Agency or instrumentality of a State or of a political subdivision of a State ...." Thus, 49 C.F.R. § 24.9(b) plainly applies to records maintained by the DOH with respect to projects for which federal funds have been received.

12. See NRS 239.010.

be open for inspection. *It does not declare that records regarding acquisition of property are public.* Acquisition records have been declared confidential under 49 C.F.R. § 24.9(b), which was adopted by statute into Nevada law. Therefore, these records fit within the exemption provided in the Nevada Public Records Act. The Nevada Public Records Act is not "applicable law" changing the confidential nature of these records.

*Id.* at 60–61, 63 P.3d at 1148 (emphasis added). I agree with the Supreme Court of Nevada that appraisal reports pertaining to *property not owned by the person or entity seeking their disclosure* are rendered confidential by 49 C.F.R. § 24.9(b), and thus are not public records absent a specific law declaring them to be public records. There is no such law in West Virginia.

Indeed, in its brief to this Court, Fort Pleasant acknowledges that it is prohibited from obtaining appraisal reports pertaining to property it does not own. Citing to the *City of Reno* case, Fort Pleasant observed that the " 'public information' confidentiality [of 49 C.F.R. § 24.9(b) ] goes ... to the accessibility of these records to *third parties* via Freedom of Information Act requests. Obviously, it would be inappropriate for information purveyors, for example, to gain access to these records for compilation, distribution, and private profit." (Emphasis added). I agree. The West Virginia Freedom of Information Act (hereinafter "FOIA"), W. Va.Code § 29B1–1, *et seq.,* provides for the disclosure of *public records. See, e.g.,* W. Va.Code § 29B–1–3 (1992) (Repl. Vol.2002) ("Every person has a right to inspect or copy *any public record* of a public body in this state, except as otherwise expressly provided by section four [§ 29B–1–4] of this article."). Because federal law renders the appraisal reports confidential with respect to third parties, they are not "public records" subject to disclosure under FOIA.

Fort Pleasant argues, however, that the language of 49 C.F.R. § 24.9(b) stating "unless applicable law provides otherwise" is "intended to allow the disclosure of this in-formation, for example, in the context of civil or criminal litigation under the applicable procedural rules." This argument must fail. In promulgating 49 C.F.R. § 24.9(b), the United States Department of Transportation could not have intended rules of civil procedure to qualify as "applicable law providing otherwise." Every state in the nation has adopted rules of civil procedure. Thus, if such rules could be relied upon to obtain confidential appraisals of non-owned property, then 49 C.F.R. § 24.9(b) would be meaningless insofar as it classifies such documents as confidential because they could potentially be disclosed to anyone involved in litigation. As this Court has previously explained,

"It is the 'duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.' " *Expedited Transp. Sys., Inc. v. Vieweg,* 207 W.Va. 90, 98, 529 S.E.2d 110, 118 (2000) (quoting *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)) (emphasis omitted). Thus, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938). Accord Syl. pt. 2, *Conseco Fin. Serv'g Corp. v. Myers,* 211 W.Va. 631, 567 S.E.2d 641 (2002) (" 'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925).").

*Bluestone Paving, Inc., A Corp. v. Tax Comm'r of State,* 214 W.Va. 684, 689, 591 S.E.2d 242, 247 (2003).[13] Had the United States Department of Transportation intended to create a broad sweeping exception to the confidentiality of acquisition records un-

---

**13.** Although the foregoing quote addresses the interpretation of statutes rather then regulations, we have previously observed that "[i]t is generally accepted that statutes and administrative regu-lations are governed by the same rules of construction." *Snider v. Fox,* 218 W.Va. 663, 667, 627 S.E.2d 353, 357 (2006) (internal quotations and citations omitted).

der the rules of civil procedure, it could have easily created a regulation establishing such a litigation exception. It did not. I find further support for rejecting Fort Pleasant's theory of a litigation exception to the confidentiality of acquisition records in 49 C.F.R. 24.9(e),[14] which expressly maintains the confidentiality of such records in the context of an administrative appeal. It would be nonsensical to conclude that documents retaining their confidentiality in the context of an administrative appeal would be stripped of that confidentiality in civil litigation. Consequently, I believe the majority was wrong to conclude that these confidential records are discoverable.

### B. The Majority's Basis for Allowing Discovery of Appraisal Reports for Other Properties Is Legally Unsound

The majority opinion takes the position that appraisal reports on properties surrounding Fort Pleasant's property, which were prepared by experts expected to testify in the case, may be discoverable in "appropriate circumstances" and if necessary upon a showing of "exceptional circumstances."[15] The majority opinion reached this erroneous conclusion without any analysis of our rules pertaining to discovery of information from a testifying expert. As I will demonstrate, until the decision in this case, the so called "appropriate circumstances" and the doctrine of exceptional circumstances had no applica-

tion to materials sought from a testifying expert.

**1. Appropriate circumstances.** To begin, Rule 26(b)(4)(A) of the West Virginia Rules of Civil Procedure sets out the guidelines for discovering information from trial experts. Pursuant to Rule 26(b)(4)(A)(i) a party may use interrogatories to learn information regarding trial expert witnesses, and under Rule 26(b)(4)(A)(ii) a party may depose a trial expert witness. For the purposes of my dissent, only Rule 26(b)(4)(A)(i) is relevant. With respect to discovering information from a trial expert through interrogatories, Rule 26(b)(4)(A)(i) provides the following:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Rule 26(b)(4)(A)(i) is plain and clear. Nowhere in the rule does it require a party to turn over documents his/her trial expert prepared in another proceeding. In fact, under the rule a party is not obligated to turn over the actual report that his/her expert prepared in the case in which he/she is going to testify. The majority opinion has attempted

---

**14.** 49 C.F.R. 24.9(e) states in full

*Review of files by person making appeal.* The Agency shall permit a person to inspect and copy all materials pertinent to his or her appeal, *except materials which are classified as confidential by the Agency.* The Agency may, however, impose reasonable conditions on the person's right to inspect, consistent with applicable laws.

(Second emphasis added).

**15.** I must point out that the majority opinion incorrectly stated the grounds argued by DOT before this Court as the basis for nondisclosure of appraisal reports from surrounding property. The majority opinion states that DOT argued before this Court "the attorney-client privilege and/or prepared in anticipation of litigation." This is simply wrong. Nowhere in DOT's petition did it argue that the appraisal reports of surrounding property were not discoverable because of the attorney-client privilege or because they were prepared in anticipation of litigation.

Assuming, for the sake of argument, that DOT raised those issues at the trial court level, it is black letter law that those issues were waived before this Court because they were not raised in the petition. *See Tiernan v. Charleston Area Med. Ctr., Inc.* 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised ... are deemed waived."); Syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) ("[Issues] ... that are not argued in the briefs ... may be deemed by this Court to be waived.").

In this proceeding DOH argued that the documents were not discoverable because of specific federal law, and because of a purported qualified privilege that attaches to documents being used in an ongoing litigation. I am offended by the majority opinion's mischaracterization of DOH's position because it is a disingenuous attempt to justify the legally unsound conclusion reached by the majority opinion. This is to say that by inaccurately stating DOH's position the majority opinion was able to invoke and apply the nonapplicable exceptional circumstances doctrine.

**616**

to get around the clear requirements of Rule 26(b)(4)(A)(i) by omitting any discussion of the rule in the context in which it applies. To add insult to injury, the majority opinion adopts the federal position on this issue in footnote 6,[16] even though the majority opinion states that it is declining to do so.[17]

The majority opinion provides "that discovery of reports and evaluations prepared by designated witnesses relative to other properties may be discoverable information in appropriate circumstances." The opinion fails to expressly state what those "appropriate circumstances" are. Instead, the opinion drops a footnote and references to a federal rule that addresses disclosure of information from an expert. Under federal Rule 26(a)(2)(B) a party calling an expert must turn over "the data or other information considered by the witness in forming the opinions[.]" [18] It is this provision of the federal rule that the majority opinion has relied upon to establish its heretofore unheard of "appropriate circumstances." However, under a plain application of our Rule 26(b)(4)(A)(i), the reports are simply not discoverable.

To be clear, the majority opinion resorted to evasive language to expand Rule 26(b)(4)(A)(i) to incorporate the provisions contained in federal Rule 26(a)(2)(B). The manner in which the majority opinion chose to modify Rule 26(b)(4)(A)(i) is insulting to the integrity of this Court. There was simply no need for the majority opinion to deny that it was changing our rule. The fact that

the rule was modified is plainly demonstrated by the outcome reached by the opinion.

**2. Exceptional circumstances.** Under the majority opinion, once "appropriate circumstances" have been shown to permit disclosure, there must be a further determination of "exceptional circumstances" before the reports are actually turned over. In other words, under the majority opinion if the appraisal reports were prepared by the trial experts as non-trial experts in the other proceedings, then exceptional circumstances must be shown to obtain the reports. This is absurd.[19]

The doctrine of exceptional circumstances is utilized in Rule 26(b)(4)(B) with respect to information sought from non-trial experts.

Under Rule 26(b)(4)(B) experts consulted in anticipation of litigation, but who are not expected to be called as a witness at trial, are subject to a more restrictive discovery standard. For experts not expected to testify, the rule is that discovery can only take place (1) as provided in Rule 35(b), or (2) upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., *Litigation Handbook*, § 26(b)(4)(B), p. 740–741. (2d ed.2006). The majority opinion has unfortunately merged the exceptional circumstances doctrine of Rule 26(b)(4)(B) with Rule 26(b)(4)(A)(i).

**16.** The majority opinion erroneously states that under the federal rules of civil procedure the reports sought in this case would be discoverable. I disagree for the reasons discussed in this dissent with respect to the requirement under the federal regulations that the reports remain confidential.

**17.** I will note that under the federal law two rules govern disclosure of trial expert information: Rule 26(a)(2)(B) and Rule 26(b)(4). The majority opinion has relied on Rule 26(a)(2)(B), which does not exist under our rules:

Under the federal rule, Rule 26(a)(2)(B), a party is required to disclose a written report prepared and signed by the expert that includes (1) a complete statement of all opinions to be expressed and the basis and reasons therefor; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary

of or support for the opinions; (4) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (5) the compensation to be paid for the study and testimony; and (6) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 26(b)(4)(A)(i), p. 736 n. 197 (2d ed.2006).

**18.** There are other factors listed under federal Rule 26(a)(2)(B), but they have no application to the issue presented in this case.

**19.** Even if I agreed with the majority opinion's adoption of the new cryptic standard of "appropriate circumstances," I would reject adding another layer of unnecessary analysis.

To make matters worse, the majority opinion has performed this unwise union between Rule 26(b)(4)(A)(i) and the exceptional circumstance doctrine by creating an unacceptable basis for establishing exceptional circumstances. This is to say that, assuming there was a rational justification for the union of Rule 26(b)(4)(A)(i) and the exceptional circumstances doctrine, the basis for establishing exceptional circumstances set out in the majority opinion is inconsistent with the doctrine of exceptional circumstances.

In a commentary explaining the operation of the exceptional circumstances in its proper context, the following has been said:

> The party seeking discovery from non-testifying retained experts faces a heavy burden. It has been said that since a litigant will not know what facts the opposing party's non-testifying experts have discovered and what opinions they have formed, it will rarely be possible to make the required showing of exceptional circumstances.

Cleckley, *et al.*, *Litigation Handbook*, § 26(b)(4)(B), p. 741. Further, it has been said that:

> The heavy burden of establishing exceptional circumstances contemplates a showing that a party has found opinions by others on the subject to be unavailable before he/she may obtain discovery from his/her opponent's retained expert who is not expected to be called to testify on the same subject.

Cleckley, *et al.*, *Litigation Handbook*, § 26(b)(4)(B), p. 741 n. 223.

Establishing exceptional circumstances under the majority opinion will not be a "heavy burden," nor will it be "rare." This is because under the majority opinion the exceptional circumstances doctrine may be established merely by showing that the document sought was "relied upon by the witness in formulating the witness's opinion[.]" This basis for disclosure was taken by the majority opinion from the federal rule that governs disclosure of trial expert information. As I have already pointed out, under federal Rule 26(a)(2)(B) a party calling an expert must turn over "the data or other information

considered by the witness in forming the opinions[.]" Under the federal rules this is not an exceptional circumstance-only under the majority opinion has this turned into an exceptional circumstance. Moreover, under the majority opinion this is also the basis for establishing the so called "appropriate circumstances." [20]

In the final analysis, the majority opinion has done a grave disservice to the bench and bar by reaching a legally unsupportable result through the distortion of our carefully crafted rules that govern disclosure of information from trial and non-trial experts.

## III.

### The Majority Opinion Imposes an Unnecessary Burden on Trial Courts

In this proceeding the majority opinion found fault with the trial court's discovery order because it did not set out findings regarding the presence or absence of exceptional circumstances to permit disclosure of information from experts and/or consultants. As a consequence of this alleged deficiency the majority opinion crafted Syllabus point 4, which states:

> A circuit court is required, pursuant to Rule 26(b)(4)(B) of the *West Virginia Rules of Civil Procedure*, to make specific findings regarding the existence of exceptional circumstances justifying the discovery of facts known or opinions held by an expert or consultant who has been retained or specially employed by a party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial before the circuit court may compel such discovery over a party's objection.

This ruling by the majority opinion is misguided and inappropriate.

To begin, the majority opinion failed to understand that this case was brought as a challenge to a non-appealable interlocutory discovery order. This Court has recognized that, as a general rule, a trial "court is under no duty to make findings on an interlocutory

---

**20.** I doubt very seriously that the parties in this litigation would have understood this point based

upon the in artful way in which the majority opinion "rushed to judgment."

order[.]" *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 367, 508 S.E.2d 75, 84 (1998). In fact, Rule 52(a) of our Rules of Civil Procedure expressly provides that "[f]indings of fact and conclusions of law are unnecessary on … any … motion except as provided in subdivision (c) of this rule." [21]

This Court recognized in *Gaughan* that Rule 52(a) posed problems when litigants filed petitions for writs of prohibition to challenge a trial court's interlocutory order. That problem involved the lack of a record which provided the basis for a trial court's ruling. *Gaughan* set out a workable solution to the problem in syllabus point 6 of the opinion:

> A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

203 W.Va. 358, 508 S.E.2d 75.

The underlying policy concern that was implicit in *Gaughan* is that trial court's should not be forced to routinely set out detailed findings in interlocutory orders. Such a requirement would be unduly burdensome and a waste of valuable judicial time. To avoid imposing this burden on trial courts, *Gaughan* crafted a solution that

would require interlocutory orders set out detailed findings only when a party intended to challenge that order by filing a petition with this Court for an extraordinary writ. More importantly, *Gaughan* required that a party inform the trial court that a detailed order was needed because a challenge was going to be made. The decision in *Gaughan* emphasized that "[a]bsent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders."

To the extent that the majority opinion believed that the interlocutory order in this case was deficient, one of two courses were available. If the record showed that DOH did not inform the trial court that it was filing a petition for a writ with this Court and therefore needed a detailed interlocutory order, DOH failed to carry out its burden under *Gaughan* and the writ should be denied because of an inadequate record. Or, if DOH did in fact comply with *Gaughan* but the trial court failed to do so, then the case should have been held in abeyance, and this Court should have ordered the trial court to issue and submit to this Court a detailed order. While I do not believe that either course was necessary, for the reasons stated previously in this dissent, I emphatically reject the course taken by the majority opinion because it is inconsistent with *Gaughan* and the policy considerations underlying *Gaughan.*

For the numerous reasons set out above, I respectfully dissent.

---

21. Rule 52(a) does not require findings of fact and conclusions of law be set out in summary judgment orders or Rule 12 dismissals. However, by case law this Court has modified Rule 52(a) with respect to the former rulings. *See* Syl. pt. 3, *Fayette County Nat'l Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997) ("Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review.

Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed."); Syl. pt. 1, *P.T.P. v. Board of Educ. of the County of Jefferson*, 200 W.Va. 61, 488 S.E.2d 61 (1997) ("A circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact include facts which the circuit court finds relevant, determinative of the issues, and undisputed.").