The CITY OF COLUMBIA, SOUTH CAROLINA, Appellee,

v.

Douglas M. COSTLE, Administrator, Environmental Protection Agency, an agency of the United States of America, Appellant.

No. 81–1876.

United States Court of Appeals, Fourth Circuit.

Argued April 13, 1983.

Decided June 20, 1983.

Claire L. McGuire, Dept. of Justice, Washington, D.C. (Robert M. Perry, Associate Administrator and Gen. Counsel, E.P.A., Lee DeHihns, Acting Associate Gen. Counsel, E.P.A., Howard Corcoran, Attorney-Advisor, E.P.A., Washington, D.C., Andrew Robert Greene, E.P.A., Atlanta, Ga., Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Henry Dargan McMaster, U.S. Atty., Lincoln C. Jenkins, III, Asst. U.S. Atty., Columbia, S.C., Edward J. Shawaker, Dept. of Justice, Washington, D.C., on brief), for appellant.

Roy D. Bates, City Atty., Columbia, S.C. (Leo H. Hill, Hill, Wyatt & Bannister, Greenville, S.C., on brief), for appellee.

* Hon. James C. Fox, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and FOX,* District Judge.

HARRISON L. WINTER, Chief Judge:

The Administrator of the Environmental Protection Agency appeals from a judgment of the district court ruling that the City of Columbia, South Carolina, need not comply with the federal real property acquisition procedures, 42 U.S.C. §§ 4655 and 4651, in connection with an EPA construction grant for a sewer line to a wastewater facility. We reverse.

## I.

On June 16, 1976, the City of Columbia adopted a resolution approving a plan to build a new wastewater facility, the "Columbia Area Wastewater Facility Plan." The city applied to EPA, pursuant to § 201 of the Clean Water Act, 33 U.S.C. § 1281, for a construction grant that would reimburse a portion of the costs of building a sewer line to that facility. EPA subsequently awarded a grant to the city, subject to, *inter alia,* "Special Condition Number 1." That condition required the city to comply with the provisions of the Uniform Relocation and Real Property Acquisitions Policies Act of 1970, 42 U.S.C. §§ 4601 *et seq.* ["Uniform Act"], in acquiring land, easements, and rights-of-way for the sewer line. In relevant part, those provisions require the grant recipient to attempt to acquire the real property interest through negotiations with the landowner, during which the grant recipient must offer the landowner the full appraised value of the interest. The condition also made clear, however, that EPA would not reimburse any portion of the amounts paid for the easements or rights-of-way themselves.

The city accepted the grant "under protest," objecting to this condition. On appeal to the EPA Board of Hearing Examiners, however, the condition was upheld, as was the EPA's refusal to share in the costs

of acquiring easements and rights-of-way. The city then instituted this suit in the district court, seeking to be relieved of the burden of complying with Special Condition Number 1 or, alternatively, requesting that EPA be required to reimburse a portion of the costs of acquiring the easements.

The district court reversed the EPA Board's decision. The court held that the Uniform Act is inapplicable to the acquisition of these easements because, first, such acquisitions will not result in the displacement of any persons from their homes, and, moreover, such acquisitions are not part of the "project" to which EPA is contributing funds. The district court also concluded that even if the Uniform Act does apply, compliance is excused here because it would be "impracticable and economically wasteful" and would chill the city's ability to acquire easements by gift or at a nominal cost through negotiations. The district court therefore vacated Special Condition Number 1. This appeal followed.

## II.

To sustain the district court's conclusion that the city is not required to comply with the Uniform Act, the city advances several arguments why the Uniform Act is inapplicable to it. First, it contends that the Act does not apply because no person will be displaced from his home as a result of the city's acquisition of easements and rights-of-way. Next it is asserted that the Act is inapplicable because no monies derived from a federal grant will be used to acquire easements and rights-of-way. And, third, the contention is advanced that the Act, by its terms, applies only "to the greatest extent practicable" under South Carolina law, and that application of the Act here is impracticable. We discuss these several arguments seriatim.

First, we consider whether the Uniform Act applies to acquisitions, such as the easement acquisitions here, that do not result in the displacement of people from their homes. It is our view, unlike that of the district court, that it does. First, the title of the Uniform Act itself states that it applies both to "Relocation Assistance" and to "Real Property Acquisitions." Second, the Act is divided into two principal subchapters: one dealing with relocation assistance, 42 U.S.C. §§ 4621 et seq., and the other dealing with real property acquisitions, id. §§ 4651 et seq. Third, § 305 of the Act, 42 U.S.C. § 4655, under which EPA purported to have the authority to impose Special Condition No. 1, provides that:

> Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, a State agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such state agency that (1) in acquiring real property it will be guided, to the extent practicable under State law, by the land acquisition policies in section 4651 of this title . . . .

It is unmistakable from the plain language of § 4655 that the states must comply with the land acquisition procedures specified in § 4651[1] regardless of whether persons are displaced from their homes as a result of the land acquisitions. We therefore conclude that the fact that no persons will be displaced from their homes does not negate the applicability of §§ 4655 and 4651 to the easement acquisitions in connection with the sewer line project.

1. Section 4651 provides that, "[i]n order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices," the agency seeking to acquire real property shall 1) make every reasonable effort to acquire property by negotiation, 2) appraise the property before the initiation of negotiations, with the owner present, if he wishes, at that appraisal, and 3) make an initial offer to the landowner to acquire the property interest for the full appraisal amount.

Next, we turn to whether compliance with the Act is not required with respect to the easement acquisitions because such acquisitions are not eligible for EPA financial contribution under the grant. The city argues strenuously that the acquisition of easements is not part of the "project" referred to in § 4655, in that the EPA regulations define the "project" as only those activities actually being fully or partially paid for by federal funds. 40 C.F.R. § 30.135–17. But the plain language of § 4655 merely requires that the project "result in" the acquisition of real property, not that it "include" such acquisition. EPA has taken the position that the phrase "will result in" means whether the project *and its necessary incidents* include real property acquisitions, and we cannot say that this interpretation is arbitrary or unreasonable. Instead, this construction seems to be in conformity with the legislative history of the Act, which states that "[i]t is immaterial whether ... Federal funds contribute to the cost of the real property. The controlling point is that the real property must be acquired for a Federal or Federal financially assisted program or project." H.R.Rep. No. 91–1656, 91st Cong., 2d Sess. (1970), *reprinted at* 1970 U.S.Code Cong. & Ad. News 5853 (giving as an example a state's acquisition of rights-of-way, for a federal-aid highway, with nonfederal funds).

It is undisputed in the present case that the acquisition of the easements is a necessary incident to the construction of the sewer line, in that the line will run through people's property. We therefore conclude that EPA was correct in ruling that the acquisition of easements falls within the provisions of § 4655.[2]

Our third consideration is whether, given our conclusion that the acquisition of easements does indeed come within the requirement of § 4655 that the land acquisition policies of § 4651 be followed by the city, such compliance is excused because it would be "impracticable and uneconomical," as the district court found.[3] The precise language of § 4655 indicates that a state must be guided, "to the greatest extent practicable under state law," by the § 4651 procedures. We conclude that by "practicable" Congress intended to have the grant recipient comply with the § 4651 procedures to the fullest extent to which it is legally capable of complying under state law. *See Beaird-Poulan, Inc. v. Louisiana Department of Highways,* 497 F.2d 54, 58 (5 Cir.), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1974); *Whitman v. Missouri State Highway Commission,* 400 F.Supp. 1050, 1066–68 (W.D.Mo.1975). The city argues that the § 4651 procedures, by requiring the city to inform the landowner of the appraised value of the easement, will chill its ability to obtain easements by gift or at a nominal cost through negotiation. But § 4655 embodies an unambiguous indication that Congress, after weighing the various policy considerations, concluded that compliance with the § 4651 procedures should not be left to the grant recipient's own judgment as to its economic best interests. We therefore conclude that the state must comply with § 4651 to the greatest extent legally possible under state law, not-

2. The city argues that this result would conflict with the decisions in *Rhodes v. City of Chicago,* 516 F.2d 1373 (7 Cir.1975), and *Cahill v. Cedar County, Iowa,* 367 F.Supp. 39 (N.D. Iowa 1973) (three-judge court), *aff'd mem.,* 419 U.S. 806, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974). We disagree. In *Rhodes,* the court found that § 4655 did not apply to condemnations by the Chicago school system because they did not result from the federal assistance to the system's educational activities. In *Cahill,* the court concluded that because the federal funding for construction of a bridge did not directly result in the construction of roads on either side of the bridge, § 4655 did not apply to the condemnation of land for those roads. In each case, therefore,

the question was whether the federally funded project directly "result[ed] in" the acquisition; and this is precisely our analysis in the present case.

3. The city also argues that Special Condition Number 1 would violate the Tenth Amendment by forcing the city to spend money, citing *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). This argument is frivolous, however; Congress may constitutionally impose conditions on voluntary programs providing states with federal funding. *See Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981).

withstanding that such compliance may be "uneconomical." [4]

### III.

The city argues that if it is to be required to comply with the procedures specified by § 4651 in the acquisition of easements, the amounts paid to acquire those easements should be reimbursable costs under the grant. The EPA ruled that although it would contribute to the transaction costs necessitated by § 4651, such as the costs of having appraisals done, it would not contribute to the amounts actually spent on acquiring the easements.

■ The city first contends that it is entitled to reimbursement of these amounts under § 201(g)(1) of the Clean Water Act, 33 U.S.C. § 1281(g)(1), under which EPA was authorized to make this grant to the city "for the construction of public owned treatment works." The city argues that the easements are included within the definition of "treatment works." But EPA correctly notes that "treatment works" include only "site acquisition of the land that will be an *integral* part of the treatment process." 33 U.S.C. § 1292(2)(A) (emphasis added). Under EPA's regulations, the easements here are not "integral" parts of the treatment process in that the land does not come into contact with the water. 40 C.F.R. §§ 35.940–2(h) and –3(a). We therefore conclude that the city is not entitled to reimbursement under the Clean Water Act and the agency's reasonable regulations thereunder.

The city alternatively argues that its entitlement to reimbursement for amounts spent to acquire the easements arises from § 211 of the Uniform Act, 42 U.S.C. § 4631. That section provides that

> The cost to a State agency of providing payments and assistance pursuant to section [ ] 4655 of this title, shall be included as part of the cost of a program or project for which federal financial assistance is available to such State agency,

and such State agency shall be eligible for Federal financial assistance with respect to such payments and assistance in the same manner and to the same extent as other program or project costs.

The city also contends that EPA's own regulations under this section provide for the inclusion of the acquisition amounts in the reimbursable project costs. 40 C.F.R. §§ 4.502(a) and 35.940–1(g).

■ We do not think that these provisions entitle the city to the reimbursement sought. EPA has taken the position that the reimbursable "costs" referred to in § 4631 and in its regulations include only the transaction costs, such as the costs of having appraisals made, incurred through compliance with the § 4651 procedures. EPA has concluded that the amounts actually paid to landowners for the easements are not reimbursable under § 4631, even if those amounts are increased by compliance with the § 4651 procedures (by heightened landowner awareness of the value of his real property interest). We think that this construction is justified by the language of § 4631, which provides that the costs of *providing* payments—not the costs of the payments themselves—are reimbursable. We therefore conclude that the city is not entitled to reimbursement for amounts that are paid to landowners in compensation for the property interests taken.

REVERSED.

---

4. The city also argues that because it sent a letter to EPA "assuring" EPA that it would comply with the § 4651 procedures, § 4655 was satisfied. But § 4655 requires that EPA receive "satisfactory" assurances, and the determination of what constitutes satisfactory assurances is clearly within the sound discretion of the agency.