724 S.E.2d 320 (2012)
STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, Petitioner
v.
Honorable Jeffrey B. REED, Judge of the Circuit Court of Wood County; Randall Rapp; Lloyd Pannell; and Robin Pannell, Respondents. and
State of West Virginia ex rel. West Virginia Department of Transportation, Division of Highways, Petitioner
v.
Honorable Jeffrey B. Reed, Judge of the Circuit Court of Wood County, and C. Matthew Jones, Respondents.
Nos. 11-1358, 11-1360.
Supreme Court of Appeals of West Virginia.
Submitted January 11, 2012.
Decided February 10, 2012.
*322 Leah R. Chappell, Adams, Fisher & Chappell, Ripley, WV, for Petitioner.
Robert L. Bays, Bowles Rice McDavid Graff & Love, PLLC, Parkersburg, WV, for Respondents, Lloyd Pannell, Robin Pannell, and C. Matthew Jones.
William Crichton, Crichton & Crichton, Parkersburg, WV, Andrew C. Woofter, Parkersburg, WV, for Respondent, Randall Rapp.
DAVIS, Justice:
This proceeding, brought under the original jurisdiction of this Court, involves two consolidated petitions for writs of prohibition filed by the West Virginia Department of Transportation, Division of Highways (hereinafter referred to as "DOH"). In both petitions, DOH seeks to have this Court prohibit enforcement of orders entered by the Circuit Court of Wood County in two condemnation proceedings. The orders challenged require DOH to turn over to the defendants, C. Matthew Jones and Lloyd and Robin Pannell, appraisal reports involving properties condemned by DOH for its South Mineral Wells project. DOH argues that the orders violate the confidentiality requirements for appraisals established by federal regulations. Mr. Jones and the Pannells argue that the circuit court's orders are consistent with this Court's decision in State ex rel. West Virginia Department of Transportation v. Cookman, 219 W.Va. 601, 639 S.E.2d 693 (2006). After a careful review of the briefs and record, and listening to the arguments of the parties, the writs prayed for are granted, and the decision in Cookman is expressly overruled in its entirety.

I.

FACTUAL AND PROCEDURAL HISTORY
DOH condemned numerous properties incident to the upgrade of the South Mineral Wells interchange on State Route 14, near its intersection with I-77 in Wood County.[1] Among the properties condemned was property owned by Mr. Jones. It appears that DOH condemned three separate tracts owned by Mr. Jones. The tracts included a Taco Bell, gas station/convenience store, parking area, and video lottery operation; the tracts involved 11,038 square feet for a controlled access right of way and a total of 5,884 feet for temporary construction easements. DOH also condemned property leased by the Pannells. The property leased by the Pannells was a Subway Sandwich Shop that was owned by Randall Rapp. The Pannell/Rapp property that was condemned involved 24,898 square feet for noncontrolled access right of way, 158 square feet for a temporary construction easement, and 2,808 square feet for a temporary structure removal easement.
Subsequent to DOH initiating separate condemnation proceedings against Mr. Jones and Pannell/Rapp, the parties engaged in discovery.[2] Mr. Jones served on DOH a discovery request seeking all appraisals that were prepared for the South Mineral Wells project. The Pannells also served a similar request. Eventually, Mr. Jones and the Pannells filed separate motions to compel DOH to turn over the appraisal information.[3] After an apparent joint hearing on the motions to compel, the circuit court entered separate *323 orders on September 19, 2011, granting the motions. The orders required DOH to deliver to Mr. Jones and the Pannells all appraisals that were prepared by any appraiser or expert for the South Mineral Wells project that DOH had designated as a witness in the condemnation proceedings.[4] Subsequent to the orders, DOH filed the instant petition for a writ of prohibition.

II.

STANDARD OF REVIEW
We have held that a writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, Crawford v. Taylor, 138 W.Va. 207, 75 S.E.2d 370 (1953). Accord Syl. pt. 1, Kristopher O. v. Mazzone, 227 W.Va. 184, 706 S.E.2d 381 (2011). In this proceeding, DOH does not contend that the circuit court lacked jurisdiction in issuing the orders. Instead, it argues that the circuit court exceeded its legitimate powers. The standard of review for this situation is set out in Syllabus point 4 of State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996):
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
In light of these established factors, we proceed to consider the parties' arguments.

III.

DISCUSSION
To decide the case sub judice, we must consider the doctrine of stare decisis as well as our prior precedent.

A. Stare Decisis
The issue presented by DOH is whether appraisal reports of condemned properties of nonparties are discoverable in a condemnation proceeding. This issue requires the Court to revisit its recent decision in State ex rel. West Virginia Department of Transportation v. Cookman, 219 W.Va. 601, 639 S.E.2d 693. "[T]he doctrine of stare decisis requires this Court to follow its prior opinions." State Farm Mut. Auto. Ins. Co. v. Rutherford, ___ W.Va. ___, ___ S.E.2d ___, ___ (2011) (Davis, J., concurring, in part, and dissenting, in part). In Syllabus point 2 of Dailey v. Bechtel Corp., 157 W.Va. 1023, 207 S.E.2d 169 (1974), we held that "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." See also In re Proposal to Incorporate Town of Chesapeake, 130 W.Va. 527, 536, 45 S.E.2d 113, 118 (1947) ("The doctrine of stare decisis rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent *324 authority." (internal quotations and citation omitted)). Moreover,

Stare decisis ... is a matter of judicial policy.... It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation.... In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.
Woodrum v. Johnson, 210 W.Va. 762, 766 n. 8, 559 S.E.2d 908, 912 n. 8 (2001) (internal quotations and citations omitted). While "this Court is loathe to overturn a decision so recently rendered, it is preferable to do so where a prior decision was not a correct statement of law." Murphy v. Eastern Am. Energy Corp., 224 W.Va. 95, 101, 680 S.E.2d 110, 116 (2009). As Justice Cleckley noted in State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995): "[A] precedent-creating opinion that contains no extensive analysis of an important issue is more vulnerable to being overruled than an opinion which demonstrates that the court was aware of conflicting decisions and gave at least some persuasive discussion as to why the old law must be changed." Guthrie, 194 W.Va. at 679 n. 28, 461 S.E.2d at 185 n. 28.
As discussed below, the decision in Cookman failed to resolve the issue of the discoverability of federally-funded condemnation appraisal reports under the applicable federal law. "The omission unquestionably provides this Court with the special justification necessary for the departure from the doctrine of stare decisis." Murphy, 224 W.Va. at 101, 680 S.E.2d at 116. See also State v. Mullens, 221 W.Va. 70, 91, 650 S.E.2d 169, 190 (2007) ("Our decision to depart from stare decisis is based upon a `serious judicial error' in the Thompson opinion." (footnote omitted)).

B. The Cookman Opinion
In the instant proceeding, the record shows that the circuit court relied upon the decision in State ex rel. West Virginia Department of Transportation v. Cookman, 219 W.Va. 601, 639 S.E.2d 693, in ordering DOH to turn over appraisal reports to Mr. Jones and the Pannells. DOH challenges the decision in Cookman by arguing that the appraisal reports are confidential under federal law and therefore cannot be disclosed. Mr. Jones and the Pannells argue that Cookman controlled the issue and that, under that decision, the circuit court properly ordered the appraisal reports to be produced.
In Cookman, the DOH condemned a number of properties while constructing Corridor H, a federally-assisted highway project. DOH was forced to initiate a condemnation proceeding against one of the property owners because the property owner objected to the price that DOH offered to pay for its property. During the condemnation proceeding, the property owner requested appraisal reports of its property that were prepared by DOH and appraisal reports from other properties DOH condemned for the Corridor H project during a specified period. At the trial court level, DOH contended that the request for the appraisal reports was beyond the scope of discovery, irrelevant, burdensome and violated the attorney-client privilege. The trial court rejected DOH's arguments and ordered the appraisal reports be turned over to the property owner. DOH filed a petition for a writ of prohibition with this Court seeking to stop enforcement of the circuit court's discovery order.
During the Cookman proceeding before this Court, DOH reasserted some of the arguments it made below, but also argued for the first time that federal law precluded disclosure of the appraisal reports. The majority opinion in Cookman declined to address the federal law question because it had not been presented to the trial court.[5] In resolving the issue of disclosure of the appraisals, *325 the majority opinion divided the circuit court's order into three parts: (1) turning over appraisal reports for defendant's property prepared by nontestifying experts; (2) turning over appraisal reports for other Corridor H properties prepared by testifying experts who served as nontestifying experts when preparing the appraisal reports; and (3) turning over appraisal reports for other Corridor H properties prepared by testifying experts who served as testifying experts when preparing the appraisal reports.
With respect to the third category of appraisals outlined in Cookman, the majority opinion said that the trial court properly ordered the disclosure of those appraisal reports. However, the majority opinion found that the trial court's order regarding the first two categories of reports was not enforceable because the order did not set out a justification for such disclosure. Although the majority opinion granted the writ for the latter issues only, the opinion indicated that the circuit court could order the aforementioned reports be disclosed if it made "the requisite finding of exceptional circumstances as required by Rule 26(b)(4)(B) of the West Virginia Rules of Civil Procedure." Cookman, 219 W.Va. at 608, 639 S.E.2d at 700. As the dissenting opinion in Cookman and the following analysis demonstrates, the disclosure issue at hand is not governed by Rule 26(b)(4)(B), but rather by West Virginia Rule of Civil Procedure 26(b)(4)(A).
The Cookman majority's decision to allow the appraisal reports to be discoverable was based on Rule 26(b)(4)(B). The dissenting opinion in Cookman pointed out that the proper analysis should have been based on Rule 26(b)(4)(A):
To begin, Rule 26(b)(4)(A) of the West Virginia Rules of Civil Procedure sets out the guidelines for discovering information from trial experts. Pursuant to Rule 26(b)(4)(A)(i) a party may use interrogatories to learn information regarding trial expert witnesses, and under Rule 26(b)(4)(A)(ii) a party may depose a trial expert witness. For the purposes of my dissent, only Rule 26(b)(4)(A)(i) is relevant. With respect to discovering information from a trial expert through interrogatories, Rule 26(b)(4)(A)(i) provides the following:
A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
Rule 26(b)(4)(A)(i) is plain and clear. Nowhere in the rule does it require a party to turn over documents his/her trial expert prepared in another proceeding. In fact, under the rule a party is not obligated to turn over the actual report that his/her expert prepared in the case in which he/ she is going to testify. The majority opinion has attempted to get around the clear requirements of Rule 26(b)(4)(A)(i) by omitting any discussion of the rule in the context in which it applies. To further confuse the matter, the majority opinion adopts the federal position on this issue in footnote 6, even though the majority opinion states that it is declining to do so.[[6]]
*326 Cookman, 219 W.Va. at 615-16, 639 S.E.2d at 707-08 (Davis, C.J., dissenting) (footnote added).[7]
In the final analysis, the Cookman opinion stands for the proposition that all appraisal reports generated during a federally-funded highway project undertaken by DOH are discoverable in a condemnation proceeding. Although in the instant proceeding the trial court correctly interpreted Cookman as authorizing the discovery of appraisal reports, Cookman is inconsistent with federal law and simply cannot be followed.

C. Cookman Is Legally Incorrect Because it Failed to Consider Controlling Federal Law
The result in Cookman was reached because the majority opinion declined to analyze the discovery of appraisal reports under federal law as requested by DOH. As our analysis of the instant case will demonstrate, if Cookman had applied federal law, the outcome in that case would have been different.
1. Applicable federal law. In the case sub judice, during the trial court proceedings and in the matter before this Court, DOH contended that federal law did not permit the release of appraisal reports from properties not owned or possessed by Mr. Jones and the Pannells.[8] We now proceed to review the relevant federal law.
To begin, DOH specifically contends that the Uniform Relocation Assistance and Real Property Acquisition Policies Act, found at 42 U.S.C. § 4601 et seq. (hereinafter referred to as the "Federal Relocation Act"), is applicable to property it condemned in carrying out the South Mineral Wells highway construction project.[9] Federal funding assistance under the Federal Relocation Act is available only where the appropriate state agency provides assurances that "in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 ... and the provisions of section 4652 of this title[.]" 42 U.S.C. § 4655(a)(1) (1987) (2006 ed.).[10]See West Virginia Dep't of Transp. v. Dodson Mobile Homes Sales & Servs., Inc., 218 W.Va. 121, 125, 624 S.E.2d 468, 472 (2005) ("As a condition of receiving federal assistance for a project resulting in the acquisition of real property, a State agency must agree to comply with the terms of the Act."). See also Commissioner of Transp. v. Rocky Mountain, LLC, 277 Conn. 696, 894 A.2d 259, 275 (2006) ("The uniform relocation act further requires states seeking federal funds to comply with the provisions of the act."). With respect to the requirement that states comply with federal law to the "greatest extent practicable under State law," it has been observed that "by `practicable' Congress intended to have the grant recipient comply with the § 4651 procedures to the fullest extent to which it is legally capable of complying under state law." City of Columbia, S.C. v. Costle, 710 F.2d 1009, 1013 (4th Cir.1983) (citations omitted). The decision in Costle also made clear that "the state must comply with § 4651 to the greatest extent legally possible under state law, notwithstanding that such compliance may be `uneconomical.'" Costle, 710 F.2d at 1013-14. Plainly, then, unless there is some impediment *327 to compliance under state law, the DOH is required to fully comply with the provisions of 42 U.S.C. § 4651 when acquiring real property for a project in which it receives federal funding.
Rather than creating an impediment to the application of the Federal Relocation Act, the State Legislature implemented the Federal Relocation Act through enactment of W. Va. Code § 54-3-1 et seq.[11] The implementation of the Federal Relocation Act is provided for specifically in W. Va.Code § 54-3-3 (1988) (Repl.Vol.2008) as follows:
In order to ... satisfy the requirements of adequately compensating displaced persons under such federal acts, each acquiring agency[[12]] is hereby required and is hereby granted plenary power and authority to adopt rules and regulations, which shall have the force and effect of law, to implement the provisions of such federal acts and make applicable to such acquiring agency the policies and requirements of such federal acts which are pertinent to the mission and functions of such acquiring agency, including, without in any way limiting the generality of the foregoing, the carrying out of all procedures and the making of all financial assistance payments, relocation assistance payments, replacement housing payments, loans and expense reimbursement payments required by such federal acts, subject only to any restrictions or limitations imposed by the constitution of the State of West Virginia.....
(Footnote and emphasis added). See also Huntington Urban Renewal Auth. v. Commercial Adjunct Co., 161 W.Va. 360, 367, 242 S.E.2d 562, 566 (1978) ("To carry out the federal mandate, the Legislature enacted W. Va.Code, 54-3-3 [1972] which makes the federal real property acquisition policies applicable to state agencies and gives state agencies `plenary power and authority to adopt rules and regulations, which shall have the force and effect of law, to implement the provisions of ... [the] federal act....'"). Thus, the foregoing demonstrates that consideration of federal law is necessary to resolve the issues raised in connection with acquiring property with federal funding assistance.[13]
2. Federal law requires appraisal reports remain confidential. DOH argues that federal law does not permit the disclosure of appraisal reports as ordered by the trial court.[14] To support its argument, DOH cites to 49 C.F.R. § 24.9 (2010). Under 49 C.F.R. § 24.9(a), government agencies that acquire real property are required to maintain records to establish their compliance with the Federal Relocation Act.[15] However, *328 these records are deemed confidential under 49 C.F.R. § 24.9(b) as follows:
(b) Confidentiality of records. Records maintained by an Agency in accordance with this part are confidential regarding their use as public information, unless applicable law provides otherwise.
Other than the dissenting opinion in Cookman, only one court has addressed the meaning of confidentiality under 49 C.F.R. § 24.9(b). This issue was addressed by the Supreme Court of Nevada in City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 63 P.3d 1147 (2003). In Reno, a local newspaper sought to obtain, inter alia, copies of appraisal documents for real property that was being acquired from various landowners in furtherance of a public works project in the city of Reno. The project was "classified as a federal highway project," therefore, the city was required to comply with the Federal Relocation Act. Reno, 119 Nev. at 57, 63 P.3d at 1148. Relying on the plain meaning of 49 C.F.R. § 24.9(b), the Supreme Court of Nevada concluded that "this regulation plainly makes records involved in the acquisition of real property for federally funded programs confidential, and not public information, unless there is a law providing that they are not confidential." Reno, 119 Nev. at 60, 63 P.3d at 1150. The newspaper unsuccessfully argued that "the acquisition and relocation records are public records and are required to be open for inspection under the Nevada Public Records Act." Reno, 119 Nev. at 57-58, 63 P.3d at 1148. Rejecting this argument, the Supreme Court of Nevada observed that
[t]he Nevada Public Records Act merely provides that public records that are not "declared by law to be confidential," must be open for inspection. It does not declare that records regarding acquisition of property are public. Acquisition records have been declared confidential under 49 C.F.R. § 24.9(b), which was adopted by statute into Nevada law. Therefore, these records fit within the exemption provided in the Nevada Public Records Act. The Nevada Public Records Act is not "applicable law" changing the confidential nature of these records.
Reno, 119 Nev. at 60-61, 63 P.3d at 1148.
Mr. Jones and the Pannells argue that Reno is distinguishable from the facts of their cases because Reno dealt with disclosure under a freedom of information statute.[16] Further, they contend that the confidentiality provision in 49 C.F.R. § 24.9(b) is not applicable if state law provides for disclosure. According to Mr. Jones and the Pannells, the Cookman decision and its interpretation of Rule 26(b)(4)(B) represent state law that authorizes disclosure of the appraisal reports.
In relying on Cookman and its interpretation of Rule 26(b)(4)(B) as sufficient to satisfy the "state law" exception contained in 49 C.F.R. § 24.9(b), Mr. Jones and the Pannells overlook express language in W. Va.Code § 54-3-3 that limits the type of "state law" that could override the confidentiality requirement of 49 C.F.R. § 24.9(b).
The Legislature has determined through W. Va.Code § 54-3-3 that, "subject only to any restrictions or limitations imposed by the constitution of the State of West Virginia," the Federal Relocation Act is binding on the State and its subdivisions. There is no provision in W. Va.Code § 54-3-3 which authorizes the imposition of limitations on any requirement under the Federal Relocation Act by state statutes or regulations, non-constitutionally based judicial decisions or court rules, or local ordinances. The statute provides clearly that a state constitutional violation could nullify provisions of the Federal Relocation Act. In other words, the Legislature chose to bind the State to the Federal Relocation Act, so long as it was not in conflict with the state constitution.[17] The *329 Cookman decision was not based upon a finding that the Federal Relocation Act conflicted with state constitutional law. Consequently, Cookman cannot be used as state law to override the confidentiality requirement of 49 C.F.R. § 24.9(b). Moreover, in this proceeding, we have not been asked to decide if any provision the Federal Relocation Act conflicts with the state constitution.
Therefore, we hold that a real property appraisal report generated in compliance with 42 U.S.C. § 4601 and W. Va.Code § 54-3-1 et seq., and its accompanying regulations, is not discoverable in a condemnation proceeding by a party who did not own or have any legally cognizable possessory interest in such real property. In view of this holding, the decision in State ex rel. West Virginia Department of Transportation v. Cookman, 219 W.Va. 601, 639 S.E.2d 693 (2006), is overruled in its entirety.

IV.

CONCLUSION
DOH's petitions for writs of prohibition are granted, and the circuit court's discovery orders dated September 19, 2011, in Civil Action Nos. 10-C-109, 10-C-286 and 10-C-332, are vacated and prohibited from enforcement.
Writs Granted.
Justice DAVIS delivered the Opinion of the Court.
Justices BENJAMIN and WORKMAN dissent and reserve the right to file dissenting opinions.
WORKMAN, Justice, dissenting:
This case required the Court to determine whether two consolidated petitions for writs of prohibition filed by the West Virginia Department of Transportation, Division of Highways (hereinafter, the "DOH") should be granted to prohibit enforcement of orders entered by the circuit court in two condemnation proceedings. The majority opinion concluded that the writs should be granted. It also overruled this Court's recent opinion in State ex rel. West Virginia Department of Transportation v. Cookman, 219 W.Va. 601, 639 S.E.2d 693 (2006). The majority opinion held that "a real property appraisal report generated in compliance with 42 U.S.C. § 4601 et seq., and its accompanying regulations, is not discoverable in a condemnation proceeding by a party who did not own or have any legally cognizable possessory interest in such real property." For the reasons outlined below, I believe that the majority of this Court was in error in granting the DOH's writs. Therefore, I dissent.
In this case, the DOH condemned numerous properties as a part of the expansion of the highway exchange at South Mineral Wells in Wood County. During the condemnation proceedings, the respondents sought copies of the appraisals of the neighboring properties in an effort to determine if they were receiving a fair value for their land. The circuit court considered their requests and found that the appraisals to the other properties were relevant to the issue of whether the DOH's expert witness/appraiser was consistent in his approach to valuation and would allow the respondents to discover inconsistencies for purposes of cross-examination and possible impeachment. It is important to note that the DOH used one appraiser to perform all of the appraisals on all of the properties in question.
The circuit court's decision was well-reasoned and sensible given the circumstances of this case. While the circuit court granted the respondent landowners' motions to compel the DOH to produce the appraisals, it simultaneously ordered the DOH to give each and every landowner, whose appraisals would be released, thirty days notice in order for them to file any objections to the release of such information. This was done in an effort to provide further protection to all of the landowners in question. The circuit *330 court also ordered that the appraisals could not be released until after the notification/objection period had elapsed. It is also important to note that after the DOH provided notice to all of the relevant landowners, only one such landowner responded and that landowner stated that he did not object to his appraisal being provided to the respondents.
The majority opinion's rejection of the circuit court's reasonable solution to the underlying situation, as well as its overruling of Cookman, is not based in law. While I agree that the DOH is bound by federal law and must comply with all relevant regulations, the majority opinion's acceptance of the DOH's argument amounts to nothing more than tortured logic. Basically, the DOH maintained that nothing in federal law mandated the release of the information and as a result it was "unlikely" that the circuit court's ruling was proper. Within that argument is the implicit admission that nothing in the federal or state law prohibits or limits in any way the release of such information in a court proceeding such as the one that was before the circuit court.
A review of the applicable laws shows that there is no provision that prevents the circuit court from ordering the production of the appraisals. The majority opinion based its decision on the only case that has addressed the meaning of the word confidentiality under the relevant federal rules. However, the majority's reliance upon City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 63 P.3d 1147 (2003), is misplaced. In that case, the Supreme Court of Nevada prevented a local newspaper from obtaining copies of appraisal documents through a freedom of information act request (FOIA) for real property that was being acquired from various landowners in furtherance of a public works project in the City of Reno. In the instant case, however, the respondents did not seek the information by use of FOIA nor did they seek to disseminate it publicly. Instead, the information was sought during discovery by landowners who were simply trying to determine what methods the DOH's appraiser used in making a monetary determination of the value of their land. The circumstances in the present case are vastly different than those in Reno, and is inapposite both factually and legally.
The majority opinion's decision allows the DOH to do whatever it chooses to do in appraising land in future condemnation proceedings with neither any type of check on its actions nor any means for landowners whose property is being condemned to have any examination of the fairness and consistency or lack thereof by the government's appraisers. It further allows the DOH to do so under the guise of confidentiality even when there are relevant and material reasons for disclosing the appraisals to the respondents. In this case, there were four gas stations that were in close proximity and were affected by the condemnation proceedings. Without reviewing the appraisals of the similarly affected properties, it was impossible for the respondents to determine if their properties were evaluated differently. As Justice Starcher pointed out in his separate opinion in Cookman, the government is the 800-pound gorilla in this scenario, and property owners should have the right to full information regarding how the amount of compensation for their property was determined. 219 W.Va. at 608, 639 S.E.2d at 700 (Starcher, J, concurring, in part, dissenting, in part).
Courts routinely deal with sensitive information and assuming these appraisals did contain sensitive information (which is not actually supported by the record), the circuit court could have dealt with that accordingly. Had any property owner objected, the court could have revised its order or taken other measures to protect the confidentiality of the information.[1] Moreover, given the serious barrage of identity theft that is becoming more prevalent with each passing day, courts are more cognizant of protecting an individual's personal identifiers such as social security numbers, dates of birth, financial account numbers, and sometimes home addresses in *331 the context of criminal cases. In all of those cases, the records are sealed to prevent the information from being disclosed publicly. Such actions could have been taken in this case. In fact, either the DOH or any property owner could have sought a protective order surrounding the appraisals, but chose not to do so.
The dangers of abusing government power to take private property should be taken very seriously. And, while the power of eminent domain should only be used to take private property when the taking is absolutely essential for a public purpose, when such a taking is found to be essential, it is imperative that property owners receive adequate and reasonable compensation. This Court previously explained in Major v. DeFrench, 169 W.Va. 241, 251, 286 S.E.2d 688, 694-695 (1982):
The United States and West Virginia Constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. W.Va. Const. art. 3 § 10; U.S. Const. amend. XIV. It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards. (Citation omitted.).
In this case, it is significant to note that the DOH sought to keep these documents from the respondents despite the fact that not a single property owner objected to the release of the appraisals. It begs the question as to why the DOH would go to such lengths to "protect" information that no one wanted protected? With the aforementioned in mind, it is clear that the circuit court did not abuse its discretion in ordering that the appraisals be provided to the respondents. The circuit court's order resulted in a fair and just outcome which provided the necessary safeguards for all property owners involved. It also did so in a manner that did not conflict in any way with applicable federal or state laws.
Therefore, for the reasons stated above, I respectfully dissent. I am authorized to state that Justice Benjamin joins me in this dissenting opinion.
NOTES
[1] Insofar as the matter is before the Court on petitions for writs of prohibition, the record is extremely limited.
[2] Mr. Jones and the Pannells have the same counsel.
[3] It does not appear that Mr. Rapp filed a motion seeking the appraisal information. Mr. Rapp has filed a summary response brief in this matter adopting the position of the Pannells.
[4] DOH has indicated that the order requires turning over approximately 25 appraisals, comprised of a mixture of residential, commercial and industrial properties.
[5] The dissenting opinion in Cookman pointed out that the federal issue was a question of law that could be addressed even though the matter was not raised before the circuit court. See State ex rel. West Virginia Dep't. of Transp. v. Cookman, 219 W.Va. 601, 609 n. 1, 639 S.E.2d 693, 701 n. 1 (2006) (Davis, C.J., dissenting) ("The fact that the circuit court's order was silent as to the rationale for [its] decision is of no moment, as the issues raised to this Court are legal, not factual. This Court is not bound by the legal grounds relied upon by a circuit court.").
[6] The dissent in Cookman said the following regarding the discovery of expert reports under the Federal Rules of Civil Procedure:

I will note that under the federal law two rules govern disclosure of trial expert information: Rule 26(a)(2)(B) and Rule 26(b)(4). The majority opinion has relied on Rule 26(a)(2)(B), which does not exist under our rules:
Under the federal rule, Rule 26(a)(2)(B), a party is required to disclose a written report prepared and signed by the expert that includes (1) a complete statement of all opinions to be expressed and the basis and reasons therefor; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary of or support for the opinions; (4) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (5) the compensation to be paid for the study and testimony; and (6) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure, § 26(b)(4)(A)(i), p. 736 n. 197 (2d ed.2006). Cookman, 219 W.Va. at 616 n. 17, 639 S.E.2d at 708 n. 17 (Davis, C.J., dissenting).
[7] We wish to make clear that this opinion fully adopts the reasoning of the dissenting opinion in Cookman, and rejects the majority's flawed interpretation of Rule 26(b)(4)(B).
[8] We say "possessed" because the Pannells merely had a leasing interest in the property that involves them.
[9] The parties do not refute DOH's assertion that the Federal Relocation Act is applicable to the South Mineral Wells project.
[10] 42 U.S.C. § 4655(a)(1) (1987) (2006 ed.) states in full:

(a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that
(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title[.]
[11] This Article of the W. Va.Code is entitled: "Implementation of Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 and the 1987 Amendments Thereto Known as Title IV of the Surface Transportation and Uniform Relocation Assistance Act of 1987." W. Va.Code ch. 54, art. 3.
[12] The term "acquiring agency" is defined as meaning "the state of West Virginia or any department, agency or instrumentality thereof, or any county, municipality or other political subdivision thereof or any department, agency or instrumentality of two or more states or of two or more political subdivisions of a state or states, and any person carrying out a program or project with federal financial assistance which causes a person to be a displaced person within the intent and meaning of the federal act." W. Va.Code § 54-3-1(2) (1990) (Repl.Vol.2008).
[13] The fatal flaw in the Cookman opinion was the failure to apply mandatory federal law to the resolution of an issue that was addressed by federal law.
[14] This opinion does not address the issue of providing Mr. Jones and the Pannells copies of the appraisal reports that were done on their properties. DOH has indicated that, as a policy matter, it provides appraisal reports to the actual owners of property that it condemns. See Department of Transp. ex rel. People v. Hunziker, 342 Ill.App.3d 588, 277 Ill.Dec. 407, 796 N.E.2d 122, 129 (2003) (requiring state agency provide property owner with an appraisal performed on his property).
[15] 49 C.F.R. § 24.9(a) (2010) states:

(a) Records. The Agency shall maintain adequate records of its acquisition and displacement activities in sufficient detail to demonstrate compliance with this part. These records shall be retained for at least 3 years after each owner of a property and each person displaced from the property receives the final payment to which he or she is entitled under this part, or in accordance with the applicable regulations of the Federal funding Agency, whichever is later.
[16] While we acknowledge the procedural difference between Reno and the condemnation proceedings herein, we do not find this distinction controlling or relevant.
[17] We will note that all of the federal regulations, including 49 C.F.R. § 24.9(b), that were promulgated to implement the Federal Relocation Act have been expressly adopted by state regulations. The following, in relevant part, is set out under W. Va.C.S.R. § 157-2-11.1 (1995):

11.1 Incorporation of Federal Regulations.
a. Federal-Aid Highway ProjectsBy this Legislative rule and pursuant to the authority of West Virginia Code §§ 17-2A-20 & 54-3-3..., the West Virginia Division of Highways adopts as its own, the provisions, procedures and regulations promulgated by the Federal Highway Administration of the United States Department of Transportation, as the same appear in the Federal Register and are reproduced for convenient reference as [49 C.F.R. § 24].
[1] There are often situations wherein litigants may have to use sensitive corporate documents to support their legal positions resulting in pleadings that may contain confidential trade secrets, employment records, or financial information with a court that can be damaging if not protected.